625 So.2d 492 (1993)
Marlo DABOG
v.
John DERIS, et al.
No. 93-C-0572.
Supreme Court of Louisiana.
October 18, 1993.
*493 Terry B. Loup, Morris Bart, III, New Orleans, for applicant.
Joseph R. Ward, Jr., Ward & Celesi, New Orleans, for respondents.
MARCUS, Justice.[*]
This action concerns an automobile accident which occurred on January 17, 1990. John Deris, a vice president of Acme Truck Line, Inc., was distracted while approaching a red light and failed to timely stop his car. Deris' car hit a truck operated by Danny Stevens. The jolt of the impact caused the truck to hit a motorcycle that was stopped in front of it. The motorcycle was driven by Kenneth Boudreaux and Marlo Dabog was a passenger.
Ms. Dabog filed suit against John Deris, his employer, Acme Truck Line Inc., and their insurer, United States Fire Insurance Company, alleging that Mr. Deris' negligent operation of his vehicle caused her injuries. After the close of all the evidence, the trial judge granted a directed verdict on the issue of liability in favor of Ms. Dabog and against defendants, reserving unto the jury the issues of causation and damages. In answer to the interrogatory: "[w]as the accident a proximate cause of the plaintiff's injury?," the jury responded in the negative. The trial judge entered a judgment in favor of the defendants and against plaintiff, dismissing her suit at her cost. The court of appeal affirmed, with one judge dissenting. 610 So.2d 289.[1] Upon plaintiff's application to this court, we granted certiorari to determine the correctness of that decision.[2]
The sole issues presented are whether Ms. Dabog's injuries were caused by the accident, and, if so, the amount of damages she sustained.
The standard of conduct required of persons in Louisiana in their relationships with one another as a basis of delictual liability is set forth in La.Civ.Code arts. 2315 and 2316.
Article 2315 provides in pertinent part:
Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
Article 2316 provides that:
Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill.
Accordingly, under these articles, the elements of a cause of action are fault, causation, and damages. Morris v. Orleans Parish School Bd., 553 So.2d 427, 429 (La. 1989). Generally, an appellate court may not set aside a trial court's or a jury's finding of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Further, where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. Id. However,
[a]n appellate court is not required, because of the foregoing principles of appellate review, to affirm the trier of fact's refusal to accept as credible uncontradicted testimony or greatly preponderant objectively-corroborated testimony where the record indicates no sound reason for its rejection and where the factual finding itself has been reached by overlooking applicable legal principles.
Mart v. Hill, 505 So.2d 1120, 1127 (La.1987) (citing West v. Bayou Vista Manor, Inc., 371 So.2d 1146, 1150 (La.1979)). In a personal injury suit, the plaintiff must prove causation by a preponderance of the evidence. Morris, 553 So.2d at 430. The plaintiff is aided in its proof burden by a presumption described by *494 this court in Housley v. Cerise, 579 So.2d 973, 980 (La.1991) (quoting Lucas v. Insurance Company of North America, 342 So.2d 591, 596 (La.1977)), wherein we stated:
[a] claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition.
The accident occurred on January 17, 1990. Within hours after the accident, plaintiff developed a serious headache and within a few days experienced stiffness and pain in her back, neck, legs and arms, which persisted. An appointment was made with Dr. William Batherson, a chiropractor, who began treating Ms. Dabog three days after the accident. Dr. Batherson found her complaints consistent with a herniated disc which he ascribed to the accident. After treating Ms. Dabog conservatively for a few months without improvement, he referred her to a neurosurgeon for further treatment.
On April 24, 1990, Dr. Kenneth Vogel, a neurosurgeon, examined Ms. Dabog and found muscle spasms in the back and on both sides. He determined that she had a lumbar and cervical strain and suggested that she undergo further tests. She underwent a lumbar MRI and a cervical CAT scan. The MRI revealed a herniation at the L4, 5 level in the lumbar region and the CAT scan disclosed no abnormalities. Based on these findings, Dr. Vogel diagnosed a herniated lumbar disc and a chronic cervical strain with a minimal herniated disc. He believed these conditions resulted from the accident in which Ms. Dabog had been involved. On May 30, 1990, he performed surgery to suction out the herniated disc in the lumbar region.
Dr. Michael Voth, the radiologist who performed the MRI on Ms. Dabog, affirmed that the MRI results did show a herniated disc in the lower back. Interpreting the MRI results, he explained that although the herniation did not extend far enough to catch the nerve root, it did compress the right side of the dural sac which contains nerve roots. Although he could not say for sure if the nerve roots were being impinged, he surmised that there "should" be some displacement of the nerves inside the sac considering the displacement of the sac itself. He also stated that the MRI revealed a narrowing of the disc space at the L4, 5 level in addition to the protrusion. This narrowing is usually the result of degeneration as the disc ages. Thus, it takes time to develop and is an unusual finding in a young person. However, the loss of disc space can also arise from a traumatic event. In such instances, it is not uncommon for the condition to appear within a short period of time because the injury causes a loss of disc substance.
Dr. Stewart Altman, a general practitioner, also examined Ms. Dabog on March 1, 1990. He found muscle spasm in the neck, and tenderness and a decreased range of motion in the lower back. He believed these symptoms to be indicative of a herniated disc putting pressure on the nerves in the back. Further, he attributed these problems to the accident.
Dr. James LaBorde, an orthopedic surgeon, examined Ms. Dabog on June 10, 1991, over a year after her surgery at the request of the defense. His examination revealed no objective basis for pain at this time, despite Ms. Dabog's assertions that she still experienced pain. Dr. Laborde did agree that the MRI taken in April of 1990 revealed a herniated lumbar disc. Dr. LaBorde was not asked and did not comment on whether the accident could have caused the herniation. Further, he was unable to determine from the MRI whether the herniation substantially impinged the nerve root. However, Dr. Laborde did not believe Ms. Dabog had a cervical herniation. He also testified that although herniations are most commonly caused by the aging process, he has seen teenagers with disc herniations who were not involved in accidents. In addition, he explained that studies have shown that twenty-five percent of people have some type of disc herniation.
Ms. Dabog, who was nineteen years old at the time of the accident, testified that she had never before experienced back or neck trouble. Before the accident, she was extremely active and enjoyed running, dancing *495 and bowling. She testified that she had been a member of her high school track team for three years, specializing in long distance running. Her father corroborated this testimony. Ms. Dabog, her father, and her boyfriend stated that she has been unable to perform her usual physical activities since the accident due to the pain in her back and neck.
Our examination of the record reveals uncontradicted testimony that prior to this accident, Ms. Dabog was in excellent health and led a very active and pain-free life. Soon after the accident, Ms. Dabog began experiencing severe pain, stiffness and a loss of sensation in her leg. The three physicians who examined her after the accident but prior to the MRI found her complaints consistent with a lumbar herniation impinging on the nerves in her back. It is undisputed that the MRI conducted a few months after the accident revealed that Ms. Dabog suffered from a herniated disc in the lumbar region of her back, thus objectively corroborating the earlier diagnoses. Further, the radiologist who conducted the MRI indicated that although the nerve roots were not visibly displaced, the compression of the dural sac "should" lead to some displacement of the nerves. The defense did not contradict this statement, as Dr. LaBorde "couldn't tell" if there was an impingement. Ms. Dabog eventually underwent surgery to remove the herniated disc in her lower back, and she testified that the surgery relieved some of her discomfort and also brought back the feeling in her right leg. In addition, three of the physicians who examined Ms. Dabog attributed this condition to the accident. The defense failed to refute these findings. Dr. LaBorde's testimony that he has seen teenagers with disc herniations who were not involved in accidents is refuted by the fact that plaintiff was asymptomatic prior to the accident. Therefore, it is too speculative to present a realistic alternative cause. Further, the evidence is clear that herniations can arise from a traumatic event. Thus, the uncontradicted medical evidence established a causal connection between the accident and the lumbar herniation.
Considering all the evidence, we find that the jury was clearly wrong in its determination that the accident did not cause Ms. Dabog's lumbar disc herniation. The court of appeal erred in affirming the jury's denial of recovery for this injury. As no lower court has had an opportunity to fix damages resulting from the lumbar herniation, we find it appropriate to remand the case to the court of appeal to fix these damages, determine the extent of plaintiff's other injuries, if any, and render a proper judgment.

DECREE
For the reasons assigned, the judgment of the court of appeal affirming the trial court's finding is reversed in so far as it denied recovery for the lumbar herniation. The matter is remanded to the court of appeal to fix the amount of damages for the lumbar herniation, determine the extent of plaintiff's other injuries, if any, and render a proper judgment.
NOTES
[*] Pursuant to Rule IV, Part 2, § 3, Dennis, J. was not on the panel which heard and decided this case. See the footnote in State v. Barras, 615 So.2d 285 (La.1993).
[1] 610 So.2d 289 (La.App. 5th Cir.1992).
[2] 617 So.2d 901 (La.1993).