645 So.2d 1134 (1994)
Gracie BESSARD
v.
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT.
No. 94-C-0589.
Supreme Court of Louisiana.
November 30, 1994.
*1135 Richard P. Ieyoub, Atty. Gen., Gregory P. Touchet, Asst. Atty. Gen., for applicant.
Elbert L. Guillory, Keitha A. Leonard, Julie A. Scheib, for respondent.

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, THIRD CIRCUIT, PARISH OF VERMILION
FELICIA TONEY WILLIAMS, Justice[*] Pro Tem.
The issue in this case is whether the state, through the Department of Transportation and Development ("DOTD"), is liable for injuries sustained by the plaintiff, Gracie Bessard, when she tripped and fell after her foot was caught in a hole in a segment of concrete curbing that was badly cracked and broken.

FACTS
On December 9, 1990, Gracie Bessard was attempting to cross the street when her foot was caught in broken concrete curbing, causing her to fall to her knees and sustain serious injuries. At the time of the accident, Mrs. Bessard had just attended a 10:30 a.m. mass at Saint Theresa's Church in Abbeville, and she was attempting to walk across Charity Street near its intersection with Gertrude Street. Mrs. Bessard testified that prior to this accident, she walked to church to attend mass three or four times a week. She also testified she walked frequently, and that she was familiar with the area, but that she did not usually cross at the spot where the accident occurred.
On the date of the accident, Mrs. Bessard's daughter had driven her to the church, and Mrs. Bessard was walking to her daughter's car when she tripped and fell. She testified that she and a friend, Ada Johnson, walked from the sidewalk onto the grass alongside Charity Street, where they stopped to check for traffic before crossing. Mrs. Bessard looked down before stepping onto the grass, then directed her attention to the cars crossing in front of her. After the traffic cleared, Mrs. Bessard and Mrs. Johnson attempted to cross the street when Mrs. Bessard's foot was caught in the cracked curbing and she fell. Photographs introduced into evidence at trial indicate that from Mrs. Bessard's viewpoint, the cracks in the curb could not be seen. Mrs. Bessard testified she did not see the cracks in the curb before she fell. Mrs. Johnson's testimony was inconsistent on this point, perhaps as a result of confusion. However, her testimony indicates that on that particular morning, she did not notice the hole in the curb until after Mrs. Bessard fell.
Mrs. Bessard fell onto her knees and then onto her hands, and was unable to get up. Her kneecap fractured and split in two as a result of the fall. A policeman blocked the street until Mrs. Bessard's daughter drove to where Mrs. Bessard had fallen. A bystander helped Mrs. Bessard into her daughter's car. She was taken to the hospital and emergency surgery was performed on her leg. During surgery, two metal screws were placed in her knee and she was fitted with a hip to toe cast.
Mrs. Bessard testified she returned to the scene of her accident at a later date and measured the crack in the curb with her hand. The crack was about four or five inches deep, and wider than her hand with all fingers and thumb extended. She was able to place her entire hand in the crack. At the time of the accident, Mrs. Bessard was sixty-two years old. She had been a housekeeper for many years and has not been able to return to work. She has lived in Abbeville for about thirty years, and has been a parishioner at Saint Theresa's for about fifteen years.
Mrs. Bessard filed suit against the State of Louisiana, through the Department of Transportation and Development (DOTD) and the City of Abbeville. The City of Abbeville filed a motion for summary judgment. The trial court granted the motion, finding that the city was not responsible for the maintenance or repair of a state highway. After trial on the merits, the state was found solely liable *1136 for Mrs. Bessard's injuries. Judgment was rendered in favor of Mrs. Bessard in the amount of $106,951.66.[1] DOTD appealed. Finding no manifest error in the trial court's ruling, the court of appeal affirmed.[2] Upon defendant's application to this Court, we granted writ of certiorari[3] to review the correctness of that decision. For the reasons which follow, we affirm.

LAW
A plaintiff may proceed against DOTD under theories of negligence or strict liability. A strict liability claim against DOTD is governed by LSA-R.S. 9:2800, which limits the strict liability of public entities by requiring proof of the entity's actual or constructive knowledge of the defect which caused the damage.[4] Proof of scienter is the only factor which distinguishes proof of negligence from proof of strict liability. See Fontenot v. Fontenot, 93-2479 (La. 4/11/94), p. 3; 635 So.2d 219. Thus, the burden of proof is the same under either theory when DOTD is the defendant. The plaintiff must show (1) the property that caused the damage was in the custody of DOTD, (2) the property was defective because it had a condition that created an unreasonable risk of harm, (3) DOTD had actual or constructive knowledge of the risk, and (4) the defect in the property was a cause in fact of plaintiff's injuries. Sudduth v. State, Dept. of Transp. & Development, 619 So.2d 618 (La. App. 3 Cir.1993); Fortune v. City of New Orleans, 623 So.2d 701 (La.App. 4 Cir.), writ denied, 629 So.2d 1126 (1993); Boudreaux v. Farmer, 604 So.2d 641 (La.App. 1 Cir.), writ denied, 605 So.2d 1373, 1374 (La.1992); Nicholes v. St. Helena Parish Police Jury, 604 So.2d 1023 (La.App. 1 Cir.), writ denied, 605 So.2d 1378 (La.1992); Smith v. State, through Dept. of Public Safety, 620 So.2d 1172 (La.App. 1 Cir.1992); Valet v. City of Hammond, 577 So.2d 155 (La.App. 1 Cir. 1991).

ANALYSIS
It is undisputed that DOTD had custody of the curb in question. Raywood Vincent, the Parish Maintenance Superintendent, testified the curb on which plaintiff tripped was "on state right of way," thus the state is responsible for the condition of the curb. John LeBlanc, District Maintenance Engineer for DOTD, testified that DOTD regularly inspects

Past Medical Expenses $10,471.66
Future Medical Expenses 8,500.00
Past Loss of Wages 5,480.00
Future Loss of Wages 10,000.00
Pain and Suffering past and future 70,000.00
Miscellaneous expenses past and future 2,500.00
 ___________
TOTAL $106,951.66

*1137 roadways, shoulder areas, ditches, and curb sides to determine maintenance needs.
Both lower courts found DOTD had at least constructive knowledge of the hole in the curb, due to the bi-weekly inspections of roadways and curbing performed by the state. We agree with that finding. See Coley v. State, through DOTD, 621 So.2d 41 (La.App. 2 Cir.1993) (weekly inspections support finding of constructive knowledge). Both Raywood Vincent and John LeBlanc attested to the state's regular inspections of the area including the Charity Street curbing. Vincent testified that a crack in the curbing would have to be two to three inches deep before he would schedule repair work. Mrs. Bessard testified, and photographs admitted into evidence substantiated that the crack or hole in question was four or five inches deep. However, the state did not repair it. Vincent testified he would consider the hole in question "a minor imperfection."
The testimony of Mrs. Johnson and Mrs. Bessard established that the cracked curb presented an unreasonable risk of harm to pedestrians. Charity Street is the main street in the relatively small town of Abbeville, and thus, a street on which pedestrian traffic is foreseeable. The state, as custodian of the curbing, owes these pedestrians a duty of care to keep the curbing in repair so as not to cause injury. Mrs. Bessard testified she did not see the hole in the curb prior to her fall. Mrs. Johnson testified she could not see the hole from the sidewalk, nor from the grass as she stepped off the sidewalk toward the curb. Her testimony indicates one could see the hole from a distance of three feet if looking down while walking. However, she and Mrs. Bessard were looking up at traffic to determine when they could safely cross the street. The trial judge found Mrs. Bessard acted as an ordinary, prudent pedestrian by looking up to observe the traffic as she approached the curb. That finding is supported by the evidence presented at trial.[5] Pedestrians cannot be expected to constantly look down while walking on a busy street like Charity Street. See White v. City of Alexandria, 216 La. 308, 43 So.2d 618, 620 (1949) (a pedestrian is not required to constantly observe the surface of the walk or "to exercise the care that would be necessary in traversing a jungle."). The hole in the curb presented an unreasonable risk of harm to pedestrians. Compare Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106 (La. 1990) (one inch change in elevation of foyer floor in restaurant, where red quarry tile makes change unobvious, presented an unreasonable risk of harm to patrons).
Mrs. Bessard's testimony established causation. Her uncontradicted testimony established that her foot was caught in the hole in the cracked curbing, causing her to trip and fall to her knees. DOTD was responsible for the maintenance of the defective curb and had at least constructive knowledge of its defective condition. Thus, the finding of liability on the part of DOTD was not error.
Regarding DOTD's argument that the awards for future medical expenses and past and future miscellaneous expenses are excessive, we have reviewed the record and we find no abuse of discretion in the amounts awarded to the plaintiff.

DECREE
The judgment of the court of appeal is affirmed.
MARCUS, J., dissents.
LEMMON and KIMBALL, JJ., dissent and assign reasons.
KIMBALL, Justice, dissenting.
Because I believe that the majority has erred in affirming the trial court's finding that the cracked curb presented an unreasonable risk of harm to this plaintiff under the particular facts and circumstances of this case, I respectfully dissent.
Whether the plaintiff proceeds against DOTD under a negligence or a strict liability theory, she must prove the property at issue contained a defect such that it presented an unreasonable risk of harm. Oster v. Dept. of Transp. & Development, 582 So.2d 1285, *1138 1288 (La.1991); Myers v. State Farm Mutual Auto Ins. Co., 493 So.2d 1170, 1171-72 n. 6 (La.1986). Therefore, while DOTD has a duty to maintain the roadways, shoulders to the roadways, and curbs under its control in a reasonably safe condition[1], the determination of whether DOTD has breached its duty in this case requires a determination of whether the cracked curb presented an unreasonable risk of harm to this plaintiff in these particular circumstances. Oster, 582 So.2d at 1289.
The fact that a pedestrian falls does not alone elevate the condition of the street or curb to that of an unreasonably dangerous vice or defect. Shipp v. City of Alexandria, 395 So.2d 727, 729 (La.1981). As this Court has repeatedly emphasized, "[t]he unreasonable risk of harm criterion ... is not a simple rule of law which may be applied mechanically to the facts of a case." Id.; see also Landry v. State of Louisiana and the Board of Levee Commissioners of the Orleans Levee District, 495 So.2d 1284, 1287 (La.1986); Entrevia v. Hood, 427 So.2d 1146, 1149 (La.1983). Instead, reaching an intelligent and responsible decision of whether a risk is unreasonable involves consideration of moral, social, and economic values as well as the ideal of justice:
Although courts, including this court, have described the unreasonable risk of harm criterion as requiring the court to balance the likelihood and magnitude of harm against the utility of the thing, the balancing test required by the unreasonable risk of harm criterion does not lend itself well to such neat, mathematical formulations. In addition to the likelihood and magnitude of the risk and the utility of the thing, the interpreter should consider a broad range of social, economic, and moral factors including the cost to the defendant of avoiding the risk and the social utility of the plaintiff's conduct at the time of the accident.
* * * * * *
The court must carefully consider all the circumstances surrounding the particular accident under review to determine whether allowing recovery to the particular plaintiff involved, for damages occurring in the particular manner in which the plaintiff was injured, is desirable from the standpoint of justice and the social utility of the conduct of the respective parties.
Oster, 582 So.2d at 1289 (notes omitted).
In the instant case, review of all of the circumstances surrounding Ms. Bessard's accident demonstrates that the cracked curb at issue did not present an unreasonable risk of harm to Ms. Bessard. Ms. Bessard and her friend, Ms. Johnson, chose to cut across the grass and jaywalk across Charity Street instead of taking the existing sidewalk to the intersection of Charity Street and Gertrude Street, and cross at that point. The testimony of Ms. Johnson, who was walking alongside Ms. Bessard as they left the sidewalk and cut across the grass, makes it clear that the cracked section of curb at issue was visible as they approached it for a distance of at least three feet from the curb. However, Ms. Bessard testified that she did not see the cracked section of curb prior to her fall. While the majority cites White v. City of Alexandria, 216 La. 308, 43 So.2d 618 (1949), as authority for the proposition that a pedestrian is not required to constantly observe the surface of the walk or "to exercise the care that would be necessary in traversing a jungle," this Court went on to state in White that a pedestrian:
... cannot be completely oblivious of [the sidewalks'] condition; he must exercise ordinary care when using it, having in mind the well recognized fact that throughout every city of any size in this state there exist irregularities in the walkways brought about by natural causes such *1139 as rains, expansion, soil erosion and tree roots.
White, 216 La. at 309, 43 So.2d at 620.
So far, then, the circumstances surrounding Ms. Bessard's accident show that Ms. Bessard, while engaging in conduct devoid of any social utility, i.e., failing to use the sidewalk and choosing instead to cut across the grass to the street, failed to see and avoid that which could be easily observed, i.e., the cracked section of curb. See Orleans Parish School Bd. v. New Orleans, 585 So.2d 643, 647 (La.App. 4th Cir.1991); Hines v. Dept. of Transp. & Development, 503 So.2d 724, 727 (La.App. 3rd Cir.1987).
The curb at issue is a mountable, or roll up type curb, which serves the useful purposes of both facilitating drainage and allowing vehicles which leave the roadway a better chance to recover than would a barrier type curb. As such, the curb has great social utility. See Oster, supra, at 1289. While the curb in question was cracked, testimony at trial demonstrated that the condition of the curb at the time of Ms. Bessard's accident was not so poor as to lessen its effectiveness as to its designed purposes. Id. at 1290; Hines, supra, at 726 ("Furthermore, in this case, the defect in the highway was such that it posed no danger or risk of harm to vehicular traffic, the purpose for which the roadway was designed."). Therefore, the circumstances surrounding Ms. Bessard's accident now show that the curb at issue, while cracked, was effectively serving its intended socially useful function when Ms. Bessard, while cutting across the grass to the street, failed to see and avoid the clearly visible crack in the curb which was in her chosen path.
Finally, in considering all of the relevant social, moral, and economic values involved, the physical and financial inability of DOTD to maintain the state's roadways, their shoulders and curbs in anything more than a reasonably safe condition has been considered by this Court in the past as a factor in determining whether a particular condition complained of presents an unreasonable risk of harm to the plaintiff. See Hunter v. Dept. of Transp. & Development, 620 So.2d 1149, 1153 (La.1993); Oster, supra, at 1291; Myers, supra, at 1173; Manasco, supra, at 550. In my view, when this factor is considered, the circumstances surrounding Ms. Bessard's accident show that the magnitude of the risk posed and the gravity of the harm threatened by the cracked curb were small in comparison with the social utility of the curb, and the burden effectively imposed on DOTD by the majority opinion to avoid such harm is too severe.
Given the circumstances surrounding Ms. Bessard's accident, I would hold that the cracked curb at issue did not present an unreasonable risk of harm to Ms. Bessard. I therefore respectfully dissent.
NOTES
[*] Judge Felicia Toney Williams, Court of Appeal, Second Circuit, participating as Associate Justice Pro Tempore, effective September 1, 1994.

Hall, J., not on panel. Rule IV, Part 2, § 3.
[1] The trial court judgment included the following amounts:
[2] 93-0507 (La.App. 3 Cir. 2/9/94); 640 So.2d 309.
[3] 94-0589 (La. 7/5/94); 641 So.2d 209.
[4] At the time of Gracie Bessard's accident, LSA-R.S. 9:2800 provided:

2800. Limitation of liability for public bodies
A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.
B. Except as provided for in Subsection A of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
C. Constructive notice shall mean the existence of facts which infer actual knowledge.
D. A violation of the rules and regulations promulgated by a public entity is not negligence per se.
E. "Public entity" means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions.
[5] DOTD's argument that Mrs. Bessard's fall resulted from her own negligence is without merit. The record supports the lower courts' conclusion that she acted prudently and reasonably.
[1] See, e.g., Ryland v. Liberty Lloyds Ins. Co., 93-1712 (La. 1/14/94), 630 So.2d 1289, 1300 ("Rather, the duty the DOTD owes is to keep the highways and its shoulders reasonably safe."); Oster, supra, at 1291 ("Rather, the law requires DOTD to maintain the roadways and shoulders of the roads under its control in a reasonably safe condition for vehicular travel."); Manasco v. Poplus, 530 So.2d 548, 549 (La.1988) ("DOTD's duty to travelers is to keep the state's highways and their shoulders in a reasonably safe condition" citing LeBlanc v. State, 419 So.2d 853 (La.1982); Sinitiere v. Lavergne, 391 So.2d 821 (La.1980)); Myers, supra, at 1171-72 (Id.).