671 So.2d 399 (1995)
Julie E. GREEN
v.
The CITY OF THIBODAUX.
No. 94 CA 1000.
Court of Appeal of Louisiana, First Circuit.
October 6, 1995.
Writ Denied February 28, 1996.
*400 Jerald P. Block, Thibodaux, for Plaintiff-Appellee Julie E. Green.
Camille A. Morvant, Thibodaux, for Defendants-Appellants The City of Thibodaux and Titan Indemnity Company.
Before LOTTINGER, C.J., and SHORTESS, CARTER, LeBLANC and CRAIN[*], JJ.
LOTTINGER, Chief Judge.
This is an action for personal injuries sustained by the plaintiff, Ms. Julie Green, when she stepped off a cracked curb while observing a Mardi Gras parade. From a judgment in favor of Ms. Green, the City and its insurer have appealed.

FACTS
On Sunday, March 1, 1992, Ms. Julie Green was watching a Mardi Gras parade with a group of her friends near the intersection of Jackson Street and West Seventh Street in Thibodaux, Louisiana. As the first several floats passed, Ms. Green and her friends stood on Jackson Street approximately six feet from the sidewalk and the curb in question.
During a momentary lull in the parade, Ms. Green left the group and stepped up on the curb. As subsequent floats began to proceed towards them on Jackson Street, Ms. Green sought to rejoin her companions in the street. As she stepped off of the curb, Ms. Green fell into the street sustaining a fractured dislocation of her right ankle.
Ms. Green was transported via ambulance to the emergency room of Thibodaux Hospital and Health Centers where she underwent an open reduction, internal fixation surgery later that same day. She remained in the hospital for several days before being discharged. The metal internal fixation device used to stabilize her ankle was subsequently removed via an out-patient procedure.
Ms. Green filed suit against the City of Thibodaux (City) alleging that her fall was caused by the broken curb upon which she stepped, and that the condition of the curb presented an unreasonable risk of harm for which the City was strictly liable. Ms. Green amended her petition to name the City's insurer, Titan Indemnity Company, as an additional defendant.
The trial judge ruled in favor of the plaintiff concluding that the condition of the curb was a defect presenting an unreasonable risk of harm and a cause in fact of injury sustained by Ms. Green. The trial judge further held that because circumstantial evidence indicated the curb's cracked condition had existed for at least several months, the City had constructive knowledge of the defect as required under La.R.S. 9:2800, and was therefore responsible for the accident and resulting injury. From this judgment, the City and its insurer have appealed.

ASSIGNMENTS OF ERROR
On appeal, the City and its insurer set forth the following assignments of error:
(1) The trial court erred in its determination that the curb in question was defective, and that the condition of the curb was a cause in fact of Ms. Green's accident and subsequent injury;
(2) The trial court improperly applied La. R.S. 9:2800 to the facts of this case;
(3) The trial court erred, based upon the facts presented, in not applying La.Civ.Code art. 2323 and assessing a substantial portion of negligence to the actions of Ms. Green.

LAW
We need not discuss the applicability of La.R.S. 9:2800, because in a decision by this court in Daniel L. Rhodes, et al v. State, Department of Transportation and Development, *401 and State, Department of Public Safety and Corrections, 94-1758 (La.App. 1st Cir. 5/5/95), 656 So.2d 650, we have declared La. R.S. 9:2800 unconstitutional. Furthermore, the trial judge found as fact that the City had constructive knowledge of the condition of the curb.

ANALYSIS
It is clear that the City has a duty to maintain its streets in a safe condition for use by the public. Carr v. City of Covington, 477 So.2d 1202, 1204 (La.App. 1st Cir.1985), writ denied, 481 So.2d 631 (La.1986). However, it is not liable for every defect or irregularity in a street, but only for the dangerous defect that creates an unreasonable risk of injury to persons exercising ordinary care and prudence. McDade v. Town of Oak Grove, 545 So.2d 1276, 1278 (La.App. 2d Cir.1989); Montgomery v. City of New Orleans, 537 So.2d 1230, 1232 (La.App. 4th Cir.1989).
Moreover, the fact that a pedestrian falls does not elevate the condition of the street to that of an unreasonably dangerous defect. Shipp v. City of Alexandria, 395 So.2d 727 (La.1981). A pedestrian has a duty to see that which should have been seen. He is not required to look for hidden dangers, but he is bound to observe his course to see if his pathway is clear. Carr v. City of Covington, 477 So.2d at 1204; Williams v. Orleans Parish School Board, 541 So.2d 228, 230 (La.App. 4th Cir.1989). A pedestrian is held to have seen those obstructions in his pathway which would be discovered by a reasonable prudent person exercising ordinary care under the circumstances. Carr v. City of Covington, 477 So.2d at 1204; Dunaway v. Rester Refrigeration Service, Inc., 428 So.2d 1064, 1067 (La.App. 1st Cir.), writ denied, 433 So.2d 1056, 1057 (La.1983). In each case, of course, the unreasonable character of the defect must be decided on the particular facts and circumstances presented. Lutz v. City of Shreveport, 25,801, p. 3 (La.App. 2nd Cir. 5/4/94); 637 So.2d 636, 639, writ denied, 94-1487 (La. 9/23/94); 642 So.2d 1294; McDade v. Town of Oak Grove, 545 So.2d at 1278.
At the trial of this matter, Ms. Green introduced a series of photographs taken shortly after the accident depicting the section of curb which she contended posed an unreasonable risk of harm. The section in question abuts the sidewalk along Jackson Street near the corner of West Seventh Street and extends over the top of a metal drainage box which is set into the curb. Directly in front of the drainage box is a metal drainage grate which is recessed into the street.
The photographs reveal that at the time of Ms. Green's accident, that portion of the curb directly above the drainage box was cracked and appeared to slant forward approximately thirty degrees according to Ms. Green's estimation. In the estimation of Mr. Bert Hebert, Jr., Director of Public Works for the City of Thibodaux, the difference in level between the sidewalk and the curb was no greater than an inch and a half at its worst point. While it is evident that the condition of the curb was not perfect, Mr. Hebert, in his testimony at trial, stated that upon investigating the curb in question after the accident, he saw nothing which he considered to be "hazardous or unsafe". For this reason, he asked Mr. Michael Guillot, the general manager of Hofman's Music, a business fronting on the curb, to point out the spot in question.
Mr. Guillot testified that during a given week, as many as two to three hundred people come into his store. While Mr. Guillot stated that most people park alongside the store on West Seventh Street, he admitted that some of his customers would likely have to walk near the area in question when entering or leaving his store. Mr. Guillot, an employee of Hofman's since 1976, testified that while he has previously complained to city officials about drainage problems in the area, he never complained about the condition of the curb until after Ms. Green's accident on March 1, 1992.
At trial, both sides stipulated that the City never received a complaint regarding this condition until its receipt of a letter dated April 30, 1992, from Michael Guillot which notified the City of the problem with the curb. Mr. Hebert testified that upon receipt *402 of Mr. Guillot's complaint, employees of the City effected the necessary repairs that same date.
Ms. Green testified that a few minutes before the accident, the parade had "died off' and she stepped up on the curb in the hope of discerning the reason for the delay. Because there were people standing in front of her on the street[1] Ms. Green walked down the sidewalk away from the parade to a spot near the drain and attempted from this new vantage point to look back and discover the proximity of the parade's remaining floats. Upon seeing the remainder of the parade proceeding towards her, Ms. Green called to her friends, and blindly stepped off the curb to rejoin them in the street. In so doing, her foot landed on the cracked portion of the curb in question causing her to fall into the street in the area of the drain.
We are mindful that our state supreme court has, in its recent decision in Bessard v. State Department of Transportation and Development, 94-0589, p. 5 (La. 11/30/94); 645 So.2d 1134, 1137, relied upon its earlier holding in White v. City of Alexandria, 216 La. 308, 43 So.2d 618, 620 (La.1949) for the proposition that a pedestrian "is not required to constantly observe the surface of the walk or to exercise the care that would be necessary in traversing a jungle." In her brief on appeal, Ms. Green cites Bessard for the same proposition.
We, however, find the facts presented in Bessard to be distinguishable from the facts in the case before us. In Bessard the plaintiff's testimony revealed that the crack in the curb could be seen from a distance of three feet provided one was looking down while walking. The majority in Bessard found that evidence supported the lower courts' finding that plaintiff acted as an ordinary, prudent pedestrian by looking up to observe traffic as she approached the curb. The court went on to conclude that because the cracks in the curb in question were not readily apparent from plaintiff's viewpoint, the hole in the curb, like the restaurant floor in Sistler v. Liberty Mutual Insurance Company, 558 So.2d 1106 (La.1990)[2] presented an unreasonable risk of harm.
Because the majority in Bessard found the plaintiff to have been exercising ordinary care and prudence in the moments before the accident, it was not necessary for the court to quote further from its earlier holding in White[3], which went on to state that a pedestrian:
cannot be completely oblivious of its [the sidewalk's] condition; he must exercise ordinary care when using it, having in mind the well recognized fact that throughout every city of any size in this state there exist irregularities in the walkways brought about by natural causes such as rains, expansion, soil erosion and tree roots.
White, 43 So.2d at 620.
Under the facts presented in the instant case, Ms. Green, unlike the plaintiff in Bessard, did not have to concern herself with oncoming traffic. There were no immediate distractions, as the parade was still some distance down the street. The weather that afternoon was clear and dry. From the photographs introduced at the trial, we find that the unlevel surface of the curb was readily apparent and easily discoverable. There is no evidence to suggest that the condition of the curb was obscured or concealed from the view of pedestrians exercising reasonable care.
Ms. Green also admitted that while observing the parade, she had consumed several beers. While there is certainly no evidence to suggest that Ms. Green was intoxicated, this fact, combined with the readily apparent condition of the curb and Ms.
*403 Green's admitted inattention to where she was walking, substantiates our belief that Ms. Green was not exercising the degree of care that is required of a reasonable prudent person.
In Ambrose v. New Orleans Police Department Ambulance Service, 93-3099, 93-3110, 93-3112 (La. 7/5/94); 639 So.2d 216, the Louisiana Supreme Court addressed the proper standard of appellate review for factual findings. The court first cited its prior opinion in Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), wherein it stated that the court of appeal should not upset the factual findings of a trial court absent manifest error or unless clearly wrong.
This manifest error standard shields the factual findings of the trier of fact on appellate review. Id. at 1330. Application of this standard creates no real problem provided said application is limited strictly to facts. For example, in this case, due deference should be given to the findings of the trial judge as to the location of the alleged defect, the size of the crack, and even the way the crack caused the plaintiff to fall. However, when all the findings of fact as to the cracked curb are made, and the trier of fact is given the benefit of the manifest error rule as to those findings, the application of those facts to the final legal determination of whether the crack constitutes a defect that creates an unreasonable risk of harm to others should not be protected on appellate review by the manifest error rule.[4]
There is a compelling basis for this distinction. The trier of fact is in no better position than the appellate court to apply the facts, as opposed to finding the facts. Furthermore, appellate application of given facts to reach a particular legal conclusion assures uniformity of results. On the other hand, application of the manifest error standard to the ultimate legal conclusion enhances the possibility of disparate results. It increases the probability that the same facts will result in different conclusions as to whether a condition constitutes a defect.
This case involves a pedestrian injured by allegedly defective curbing. Ordinarily, and certainly in this case, a sidewalk pedestrian would not encounter a curb unless the pedestrian was crossing the street. Furthermore, there should be no reason for pedestrians to customarily cross the street at this particular point, because the photographs clearly depict a marked pedestrian crossway immediately adjacent to the disputed area which lies directly over a drain. The salient fact is that this particular plaintiff was not an ordinary pedestrian but a Mardi Gras parade spectator. To require that this particular curb be maintained to a standard sufficient to protect this pedestrian against injury resulting from this extraordinary use would place too great a burden upon the City.
The trial judge's determination that the curb in question posed an unreasonable risk of harm to ordinary pedestrians exercising reasonable care was legally wrong. See, Orleans Parish School Board v. City of New Orleans, 585 So.2d 643 (La.App. 4th Cir.), writ denied, 589 So.2d 1069 (La.1991); Williams, 541 So.2d 228 (La.App. 4th Cir. 1989); Montgomery, 537 So.2d 1230 (La.App. 4th Cir.1989); Carr, 477 So.2d 1202 (La.App. 1st Cir.1985), writ denied, 481 So.2d 631 (La.1986); Shipp, 395 So.2d 727 (La.1981); White, 43 So.2d 618 (La.1949). The City was not responsible for Ms. Green's accident.

CONCLUSION
In light of our determination that the condition of the curb did not present an unreasonable *404 risk of harm, we need not consider the remaining issues raised by the City in this appeal.
For the foregoing reasons, the judgment of the trial court is reversed. All costs of this appeal are to be borne by Ms. Green.
REVERSED AND RENDERED.
SHORTESS, J., dissents with reasons.
SHORTESS, Judge, dissenting.
To reach its result, the majority boldly holds that determining whether a defective condition presents an unreasonable risk of harm is a legal question (so a manifest error standard of review is inapplicable). I disagree. This question involves numerous factual determinations, combined with social, moral, and economic considerations. It involves, at least, mixed questions of law and fact. Whether a defective condition presents an unreasonable risk of harm is not the same as determining whether there is a duty or the scope of a duty (both true legal questions). Here, the majority has sterilely determined the ultimate issue in the case. It is, and always has been, within the province of the jury or the court as fact finder to decide the ultimate issues in a case, subject only to a manifest error review on appeal.
The majority distinguishes between the duty to find facts and to apply facts. I disagree that the appellate court is in a better position to apply facts and assure more consistent results. Our supreme court has clearly stated that "the unreasonable risk of harm criterion ... is not a simple rule of law which may be applied mechanically to the facts of a case." Oster v. Department of Transp. & Dev., 582 So.2d 1285, 1289 (La. 1991), quoting Landry v. State, 495 So.2d 1284, 1287 (La.1986). It is a concept which requires a balancing test. Id. The majority would need a fact finder only to decide if the crack was two inches or three inches wide, or if the pavement was uneven or smooth, and then substitute its will for the fact finder's finding that the sidewalk's condition did not constitute an unreasonable risk of harm.
The majority agrees the City had a duty to maintain its curbs and sidewalks, so the appropriate question is whether this particular risk, i.e., that a pedestrian would misstep off a curb during a parade and injure herself, is encompassed by the scope of the City's duty. I believe this risk was foreseeable and within the scope of the City's duty. The City held this Mardi Gras parade and knew pedestrians routinely line the sidewalks to watch parades pass. Certainly under such circumstances it is foreseeable that someone might step or fall off a curb in an area not designated for pedestrian crossing. The plaintiff was not crossing the street, and nothing limits parade watchers to pedestrian crosswalks.
We should use the manifest error analysis here and affirm the trier of fact on its ultimate conclusion that the sidewalk's condition constituted a defect which posed an unreasonable risk of harm to plaintiff. After such an analysis, we could then address the real issue I see in this casequantification of plaintiff's contributory fault.
I respectfully dissent.
NOTES
[*] Judge Hillary J. Crain, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[1] Ms. Green testified, "[t]here weren't many people there, but it was you know, a Thibodaux-size crowd, I guess."
[2] The majority in Bessard, cited Sistler v. Liberty Mutual Insurance Company, 558 So.2d 1106 (La. 1990) for purposes of comparison. In Sistler, a one-inch change in the elevation of a red quarry tile floor in a restaurant created the illusion of a continuous level surface and therefore presented an unreasonable risk of harm to 62-year-old plaintiff-patron.
[3] It should be noted that Justice Kimble in her dissent in Bessard, went on to cite this holding from White which immediately followed the language relied upon by the Bessard majority.
[4] A cursory reading of Sistler v. Liberty Mutual Insurance Company. 558 So.2d 1106 (La.1990) might lead to the conclusion that the whole determination of whether a risk is unreasonable, including the conclusion, is a fact question. A close reading, however, does not support this view. In Sistler, the trial judge found as a fact that there was no difference in coloring between the levels at the entrance, creating the illusion that there was no elevation. The court of appeal, however, accepted the testimony of defendant's expert that white caulking at the base of the elevation made a break in color. This was a disputed fact upon which the determination that the risk was unreasonable was based. The trier of fact was entitled to a manifest error review of that fact finding. Since it was a permissible finding of fact, it was not subject to reversal on appeal. Consequently, the holding of Sistler related to a finding of fact as to color differential, and not to the application of the facts to reach the final conclusion that a defect existed.