694 So.2d 1231 (1997)
Daisy Lee WARNER
v.
The CITY OF NEW ORLEANS.
No. 96-CA-1296.
Court of Appeal of Louisiana, Fourth Circuit.
May 30, 1997.
Rehearing Denied June 30, 1997.
Frank M. Buck, Jr., Robert L. Manard, Manard & Buck, New Orleans, for Appellant.
Kimlin S. Lee, Assistant City Attorney, New Orleans, for Appellee.
Before BYRNES, CIACCIO and JONES, JJ.
BYRNES, Judge.
Plaintiff-appellant, Daisy Lee Warner, appeals the judgment of the trial court awarding her $6,000.00 for damages sustained as a result of a trip and fall injury she sustained on broken concrete at the curb of a City of New Orleans sidewalk on June 24, 1992.[1] The trial court apportioned fault 60% to the City and 40% to the plaintiff. On appeal, plaintiff asks this Court on appeal to assign all of the fault to the City. Plaintiff also asks this Court to increase the award to $25,000.00 plus medical expenses of $4,481.52. The City did not answer the appeal.

*1232 I. COMPARATIVE FAULT
The determination of whether comparative fault applies in a particular case is essentially a factual one and subject to the manifest error standard of review. Clement v. Frey, 95-1119, p. 7 (La.1/16/96), 666 So.2d 607, 610-11. Only if the apportionment of fault is found to be clearly wrong can an appeals court adjust percentages, and then only to the lowest/highest point within the factfinder's reasonable discretion. Id. at p. 7-8, 666 So.2d at 611.
The trial court found negligence on the part of the plaintiff in failing to observe the curb's condition and failing to exercise due care. The plaintiff counters that she is not required to constantly observe the surface of the walk nor is she required to exercise the care that would be necessary in traversing a jungle. Bessard v. State Dept. of Transp. and Development, 94-0589 (La.11/30/94); 645 So.2d 1134; Johnson v. New Orleans Department of Streets, 94-1542 (La.App. 4 Cir. 2/23/95); 650 So.2d 1216; Smith v. Jack Dyer & Associates, Inc., 633 So.2d 694, 699 (La. App. 1 Cir.1993).
In Bessard the pedestrian was injured on a defective sidewalk curb as she was about to enter the street. Under those circumstances the trial court found that she "acted as an ordinary, prudent pedestrian by looking up to observe the traffic as she approached the curb." Id., 645 So.2d at 1137. In the instant case the trial court could have reasonably found that an ordinary prudent person stepping up onto a curb after successfully crossing the street is no longer concerned with watching traffic, but is approaching an area of a known change of elevation requiring for that instant somewhat greater attention to the terrain. This is different from following a continuous path at the same elevation where it can be argued that one might have a reasonable expectation that the path will continue to remain uniform and level. We also note that Bessard was a manifest error review. It was not a holding that had the trial court found contributory negligence on the part of the pedestrian that an appellate court must reverse as a matter of law. In Bessard both the plaintiff and a supporting witness testified that the hole in the curb was not reasonably visible leading the trial court to find that the defect in the curbing presented an unreasonable risk of harm. The court in Bessard did not reverse the findings of the trial court as to fault as the plaintiff is asking this Court to do in the instant case. Although Bessard says that a pedestrian may not be required to constantly look down, it does not say that pedestrians have no duty of care. Pedestrians have a duty to exercise whatever care is reasonable under the circumstances, and the circumstances vary with the facts of each case. We cannot say that under the circumstances of this case that the trial court was manifestly erroneous in finding that the plaintiff failed to exercise reasonable care.
In Johnson the trial court found that the defect in the sidewalk constituted a trap because grass had grown over it so "that the hole was not apparent even when one was looking directly down on it." Id., 650 So.2d at 1218. Having made that finding it was then inconsistent for the trial court to assess 25% fault to the plaintiff in Johnson. Therefore, this Court reversed the assignment of a portion of fault to the plaintiff. The trial court in the instant case did not make a finding that the defect causing Ms. Warner's accident was a trap. After reviewing the record as a whole in light of Johnson, we cannot say that the trial court was manifestly erroneous in viewing the facts in this manner.
Smith was a manifest error review in which the appellate court refused to alter the allocation of fault made by the lower court, which would indicate that we should do the same in the instant case. Smith also states that "the pedestrian is held to have seen those obstructions in his pathway that would be discovered by a reasonably prudent person exercising ordinary care under the circumstances." Smith, 633 So.2d at 699. In Smith the appellate court sustained the trial court's failure to assign any comparative negligence to the plaintiff, but implies strongly that had the trial court assigned some degree of negligence to the plaintiff, that finding would have also been sustained under a manifest error standard of review.
*1233 We find no manifest error in the trial court's allocation of fault. That is not to say that another reasonable fact finder could not make a different allocation, nor does it mean that this Court would have necessarily made the same allocation had the matter been before us de novo. There is no mathematically precise standard for allocating comparative fault.

II. DAMAGES
The trial court awarded plaintiff $6,000.00 for all of plaintiff's damages without a breakdown. The plaintiff asked for $4,481.52 in past medical expenses. $1,000.00 of this sum was for medical expenses in connection with Dr. Lang. However, plaintiff introduced no evidence in connection with those expenses. The burden is on plaintiff to do so. We find that plaintiff failed to prove entitlement to this expense.
Plaintiff submitted a list of expenses in connection with Dr. Durham totalling $825.00. However, Dr. Durham never submitted a bill or invoice listing his charges and expenses. It is reasonable to infer that the trial court found that the plaintiff failed to prove entitlement to these expenses. We can find no manifest error in this implicit finding by the trial court.
Plaintiff submitted a bill from the United Medical Center for $199.95 for bunion surgery. It is reasonable to infer that the trial court found no causal relationship between bunion surgery and plaintiff's accident. We can find no manifest error in this finding implicit in the trial court judgment.
The City does not contest the $2456.57 balance of plaintiff's medical expenses. We, therefore, infer that this amount is included in the trial court's award of $6,000.00, leaving $3543.43 for general damages.
The standard of review for general damages is as expressed in Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La. 1993) cert denied, Maritime Overseas Corp. v. Youn, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994):
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976) and through Reck [v. Stevens, 373 So.2d 498 (La.1979)] to the present case is that the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993).
The role of the appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Youn at 1260. In effect, the award must be so high or so low in proportion to the injury that it "shocks the conscience." Moore v. Healthcare Elmwood, Inc., 582 So.2d 871 (La.App. 5th Cir. 1991). The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Ballard v. National Indem. Co. of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967). Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Bitoun v. Landry, 302 So.2d 278 (La.1974); Spillers v. Montgomery Ward & Co., 294 So.2d 803 (La.1974); Youn, supra.
*1234 In the instant case the trial court found that:
The fall caused [plaintiff] some pain to her back, hip, knee and great toe of the right foot. Apparently the trauma temporarily elevated her hypertension causing her to be hospitalized for several days for that condition. In the hospital, the injury to her great toe was not readily apparent.
The evidence does not preponderate to the accident causing arthritis to Ms. Warner's toe. Rather, it aggravated Ms. Warner's prior existing condition. Ultimately, she was operated on by Dr. Edward Lang, a podiatrist, for a hallux limitus and she had a good result.
Two podiatrists testified on behalf of the plaintiff. Plaintiff complains that the trial court should have treated them as medical experts but did not. We find that that was not a factor in the trial court's decision. For example, the trial court in its reasons for judgment explained that regardless of the weight to be given to Dr. Lang's testimony, Dr. Lang was not able to establish the causal relationship between the accident and the plaintiff's arthritis. The City offered no countervailing medical testimony and the trial court received the testimony of plaintiff's podiatrists. Therefore, we must conclude that the trial court accepted the testimony of the podiatrists at face value, but concluded that it failed to prove causation for all the damages claimed by the plaintiff.
Plaintiff contends that she is entitled to the following presumption of causation:
[C]laimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition.
Dabog v. Deris, 625 So.2d 492, 493 (La. 1993.)
However, plaintiff is not entitled to a presumption that all aches and pains that arise subsequent to an injury are the necessary consequence of that injury. Such a result would require this Court to subscribe to the post hoc, ergo propter hoc fallacy which this court has rejected. Polk v. Blanque, 93-1740 (La.App. 4 Cir. 3/15/94), 633 So.2d 1382, 1387, writ denied, 94-0923 (La.5/20/94); 637 So.2d 484.
Cases such as Dabog, Housley v. Cerise, 579 So.2d 973, 980 (La.1991) and Lucas v. Insurance Co. of North America, 342 So.2d 591, 596 (La.1977) require a seamless sequence of events before the presumption of causation will apply. Whether the chain of events is unbroken is a matter of fact to be determined by the fact finder, subject to manifest error review by this court.
This is not to say that a symptom that arises some time after the accident, or one that superficially appears to be unrelated to the accident cannot be caused by the accident. In such situations causation may be proved, but not by means of the presumption alone. It is a fact intensive inquiry.
For example, in Dabog the plaintiffs symptoms manifested themselves within hours of the accident. Prior to that time plaintiff had been in excellent health and pain free. We note that for the week that Ms. Warner was hospitalized for hypertension following the accident there is no record of foot or toe problems. The "Admission Nursing History/Assessment" form from the day of the accident shows no abrasions or lacerations and makes no mention of any evidence of physical trauma. The "Nurse's Discharge Record" form shows no abrasions, bruises, lacerations or scars.
In Housley the plaintiff's symptoms began to manifest themselves immediately after the accident. In Lucas plaintiff's two previously fractured fingers became swollen and discolored as a result of use in heavy labor or extended use in driving a truck. The fact that only the two previously injured fingers were thus affected leads to the logical conclusion that the injury caused the problem, and makes the application of the presumption of causation reasonable.
Indeed, one could say of Dabog, Housley, and Lucas that in the absence of *1235 persuasive countervailing evidence the only reasonable inference to be drawn from the facts is a finding that the accident caused the injury. The presumption of causation in such instances is really nothing more than a formulation in legal terms of the concept that a finding of causation is the inescapable logical conclusion to be drawn from the facts of those cases. In the instant case it cannot be said that the reasonable inference is that the accident is the presumptive cause of all of Ms. Warner's subsequent problems. Logic does not lead one to the inescapable conclusion that the bunion operation well over a year after the accident is the probable consequence of the accident. We cannot say that the trial court's findings, explicit and implicit, relative to causation are manifestly erroneous. Consequently we cannot say that the trial court's findings that the damages sustained by plaintiff as described in its reasons for judgment quoted above are manifestly erroneous. Based on those findings we cannot say that the trial court abused its great and vast discretion in fixing general damages at $3,543.43. It is not so low a figure relative to the damages found as to shock the conscience.
For the foregoing reasons the judgment of the trial court is affirmed.
AFFIRMED.
JONES, J., dissents.
JONES, Judge, dissenting.
The majority opinion finds no error in the trial court's assessment of comparative fault to plaintiff in failing to observe the condition of the curb, and her failing to exercise due care. However, plaintiff testified at trial she was giving proper attention to her path of travel, but conceded she was not looking down and watching her feet as she stepped when the accident occurred. This testimony alone does not support a finding of comparative fault. A pedestrian is not required to constantly observe the surface of the sidewalk or to exercise the care that would be necessary in traversing a jungle. Bessard v. State DOTD, 645 So.2d 1134, 1137 (La.1994); Johnson v. New Orleans Dept. Of Streets, 650 So.2d 1216, 1218 (La.App. 4th Cir.1995); Smith v. Jack Dyer & Associates, Inc., 633 So.2d 694, 699 (La.App. 1st Cir.1993).
The only evidence offered at trial to suggest appellant failed to exercise due care was the fact that she wore glasses and was overweight. The overall health condition of the appellant at the time of the accident in and of itself does not constitute the additional evidence required in this case to sustain the finding of comparative fault. The trial court in determining appellant was 40 percent comparatively at fault for her injuries, took notice of appellant's apparent poor eyesight and excessive weight. I find these considerations improper. The record indicates appellant was wearing corrective lens at the time of the accident, and thus was exercising due care to reduce her visual impairment. Further, Reverend Fred Drummonds, an eyewitness to the accident, testified appellant was wearing glasses when she fell and more significantly that she attempted to traverse the intersection with caution prior to her fall. There is no medical testimony, nor expert witnesses suggesting that appellant's poor vision or obesity were factors which contributed to this accident.
Moreover, nothing in the record suggests a person who was not overweight would have been able to successfully negotiate the unreasonably dangerous sidewalk appellant encountered. Hence, both the poor eyesight and excessive weight of appellant were irrelevant in causing the accident and the resultant injuries.
The majority affirms the award of damages by the trial court, and in doing so, agrees with the trial court's findings relative to causation, and subsequent award of $6000.00 in damages.
"In a personal injury suit, the plaintiff must prove causation by a preponderance of the evidence." Dabog v. Deris, 625 So.2d 492, 493 (La.1993). This standard of proof required the appellant to demonstrate that more likely than not the accident caused her injuries. In Dabog, the Supreme Court, held that appellant's burden of proof is aided by the following legal presumption:
"[a] claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in *1236 good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition."
Id. at 494. Therefore, appellant was entitled to the presumption of causation, if she could show that a) prior to the accident her right foot was in good health; b) after the accident the symptoms of which she complains continuously manifested themselves in this foot; and c) the medical evidence reveals a reasonable possibility of causal connection between the accident and the symptomatic foot condition.
The appellant satisfied these requirements and thus, was entitled to the presumption of causation. First, appellant presented unrefuted evidence that her complaints of and treatment for problems in her right foot began subsequent to the accident. Moreover, no history or medical records, introduced in evidence, indicated appellant had ongoing symptoms relating to this area of her foot prior to the accident. Finally, appellant established that there was a reasonable medical possibility these problems were caused by the accident. Both Drs. Dunham and Lang agreed that if appellant had no history of problems before the accident but had ongoing symptoms in her right big toe area afterwards, it was more likely than not or, at least, a reasonable medical possibility the accident caused these symptoms.[1] These considerations gave rise to the presumption that the accident caused, as opposed to aggravated, appellant's foot condition. Appellee presented no evidence which sufficiently rebutted this presumption. Thus, the trial court committed a factual error when it found the accident aggravated appellant's condition.
When "the abuse of discretion results from a factual or legal error the appellate court will make an independent evaluation of the record and exercise its own discretion in fixing a de novo quantum award. Suhor v. Gusse, 388 So.2d 755 (La.1980)." Pullen v. Ziegler, 562 So.2d 1093, 1095 (La.App. 4th Cir.1990). This case warrants the exercise of discretion in fixing a de novo quantum award because the award of the trial court was influenced by two erroneous factual conclusions, that the accident did not cause appellant's foot condition and more importantly, that appellant was comparatively at fault.
For these reasons, I respectfully dissent.
NOTES
[1] In the trial court the City contended that the plaintiff was injured in that portion of the right of way owned by the State of Louisiana. Therefore, the City argued below that the City could not be liable. The City has not reargued this argument on appeal.
[1] The trial court suggests that a podiatrist is not a physician and hence, cannot render a medical opinion regarding causation. We disagree. Under LSA-R.S. 37:611, a podiatrist is treated as a physician and receives his license to practice podiatry from the Louisiana State Board of Medical Examiners. Additionally, LSA-R.S. 37:612 provides that podiatry is a branch of medicine. Therefore, a podiatrist is a physician and thus, able to render a medical opinion as to causation.