587 So.2d 5 (1991)
Artis VEAZEY, Jr., et ux., Plaintiff-Appellee,
v.
STATE FARM MUTUAL AUTO INS., et al., Defendant-Appellant.
No. 90-330.
Court of Appeal of Louisiana, Third Circuit.
August 7, 1991.
*6 Raleigh Newman, Lake Charles, for plaintiff/appellee.
Gist, Methvin, Hughes & Munsterman, DeWitt T. Methvin, Alexandria, for defendant/appellant.
Before STOKER and DOUCET, JJ., and CULPEPPER,[*] J. Pro Tem.
STOKER, Judge.
This appeal arises from special damages awarded to plaintiff-appellee Rebecca Veazey for personal injuries sustained in an automobile accident. Defendant-appellant State Farm Mutual Automobile Insurance Company (hereinafter, State Farm) appeals the trial jury's awards to Rebecca for future medical expenses and for loss of earnings and earning capacity. We affirm.

FACTS
This case arose from an automobile accident on June 7, 1985 on U.S. Highway 165 in Allen Parish. A truck owned by John L. Campbell, driven by Mark Campbell and insured by State Farm, struck the rear of plaintiff's automobile. State Farm's liability was stipulated and the case was tried on the issue of damages only. The jury awarded total damages to Artis Veazey, Jr. of $2,500 and damages to Rebecca Veazey as follows: $4,817 for present medical expenses; $20,000 for future medical expenses; $20,000 for past, present and future loss of earnings and earning capacity and $10,000 for pain and suffering.
State Farm filed motions for a JNOV and for a new trial, which were denied.
State Farm appeals the judgment as to the awards to Rebecca Veazey for loss of earnings and earning capacity and for future medical expenses.

*7 OPINION

LOSS OF EARNING CAPACITY
Defendant contends on appeal that the jury erred in awarding $20,000 for loss of earning capacity to Rebecca Veazey. Defendant argues that Rebecca failed to show that she had any earning capacity prior to the accident, that there were any employment opportunities available to her in her area, or that there had been any reduction in her capability to do the type of job for which she is qualified. In essence, defendant complains that the only evidence presented to support Rebecca's claim for loss of earnings was her own self-serving testimony.
In Louisiana tort cases, the plaintiff must prove by a preponderance of the evidence the damages caused by the tortfeasor's fault. Proof is sufficient to constitute a preponderence when it shows that the fact sought to be proved is more probable than not. Green v. Superior Oil Co., 441 So.2d 54 (La.App. 3d Cir.1983), citing Jordan v. Travelers Ins. Co., 245 So.2d 151 (La.1971).
A claim for loss of earnings need not be proven with mathematical certainty, but only by such proof as reasonably establishes plaintiff's claim. This may consist only of plaintiff's testimony if considered credible by the trier of fact. Green, supra at 56, and cases cited therein; Ainsworth v. State Farm Auto. Ins. Co., 399 So.2d 1242 (La.App. 3d Cir.1981).
Earning capacity itself is not necessarily determined by actual loss; damages may be assessed for the deprivation of what the injured plaintiff could have earned despite the fact that he may never have seen fit to take advantage of that capacity. The theory is that the injury done him has deprived him of a capacity he would have been entitled to enjoy even though he never profited from it monetarily. Folse v. Fakouri, 371 So.2d 1120 at 1124 (La.1919). See also Landry v. State Farm Ins. Co., 529 So.2d 417 (La.App. 1st Cir.1980), and cases cited therein.
Before an appellate court can disturb a quantum award, the record must clearly reveal that the trier of fact abused its discretion in making the award. An award made by the trial court may not be modified unless it is unsupported by the record. The appellate question is not whether a different award may have been more appropriate, but whether the trial court's award can be reasonably supported by the record. Landry, supra at 424.
Rebecca was twenty-four years old at the time of trial. She testified that she had worked part-time as a car-hop at a Sonic Drive-In in 1982 or 1983, while she was still in school, but that she had not been employed since them. Rebecca explained that she had not worked when she was married because she did not need to. At the time of trial, she was separated from her husband and had planned to return to work. However, since her hands and arms become numb when she raises them and she suffers from frequent, severe headaches due to muscle tension, she does not feel able to work. Rebecca did not finish high school and has no special skills or training. She testified that she expects to earn only minimum wage, as she did before.
Dr. Bar-Sela, the director of the Houston Pain Control Clinic, testified that Rebecca will not be able to return to work in the foreseeable future because she could reinjure or restress her shoulders by reaching or lifting. Dr. Bar-Sela stated that Rebecca would need treatment through medication and physical therapy for at least ten years.
In summary we note the following concerning the assignment of error relative to loss of earning capacity. As noted above, defendant contends the jury made three errors:
1. Plaintiff failed to show she had any earning capacity before her accident,
2. She failed to show there were any employment opportunities available to her in her area, and
3. She failed to show that she suffered any reduction in her earning capacity "to *8 do that for which she is equipped by nature, training and experience."
With reference to point one, the record establishes that plaintiff was at least qualified to do minimum wage work, even if only as a car-hop at a drive-in fast food place. As to point two, it does not seem to us that a minimum wage worker should be bound by a rule requiring showing of availability of minimum wage work in her specific area of habitation. We live in an era when employment follows jobs and not the other way around. The third point is a medical question and was one well within the province of the jury to make based on the expert testimony which it heard.
In effect, defendant appears to take the position that an injured person may never establish a loss of earning capacity except through the testimony of experts in the field of vocational rehabilitation and economics. We think such an argument does not foreclose a finding of loss of earning capacity where a minimum wage worker is involved, and where the amount of the award is not out of line on its face.
After considering all of the evidence, we find the trial court's award of $20,000 damages for loss of earning capacity is reasonably supported by the record.

FUTURE MEDICAL EXPENSES
State Farm also argues on appeal that the trial court erred in awarding $20,000 for future medical expenses to Rebecca Veazey.
The essence of this complaint is that numerous eminently qualified medical experts, including specialists highly regarded in their areas of practice and in their locality of practice, found no disability. Yet, the jury evidently disregarded this testimony based on the testimony and opinions of Dr. Ariel Bar-Sela who, in effect, impugned the ability of all the other experts to make the proper diagnosis. Unfortunately for the defendant, the trier of fact, the jury in this case, may attach whatever value to expert opinion evidence which it deems appropriate so long as it does not abuse its discretion. Dr. Bar-Sela purported to find disability and a cause for it and gave an estimate of plaintiff's probable future expenses.
Future medical expenses, like any other damages, must be established with some degree of certainty. The plaintiff must show that, more probably than not, these expenses will be incurred. Awards will not be made in the absence of medical testimony that they are indicated and setting out their probable cost. Boothe v. New Orleans Public Service, Inc., 447 So.2d 620 (La.App. 4th Cir.1984); Sikes v. McLeary Trucking Co., 383 So.2d 111 (La.App. 3d Cir.1980). An award for future medical expenses cannot be based on mere speculation of the jury. Much stronger proof, such as medical testimony of the specific expenses to arise, should be required for such an award. Simmons v. Custom-Bilt Cabinet & Supply Co., 509 So.2d 663 (La.App. 3d Cir.1987); Sikes, supra.
Dr. Bar-Sela, an expert in physical medicine and rehabilitation, testified that he evaluated plaintiff twice, once in 1987 and once just before trial in 1989. He diagnosed plaintiff as suffering from "outlet syndrome", a condition in which the muscles of the neck and shoulders tighten and clamp on the outlets where the nerves and blood vessels run to and from the arms, resulting in numbness in the hands and arms. Plaintiff also suffers from chronic myofascial pain syndrome and muscle tension headaches.
Dr. Bar-Sela testified that plaintiff's condition should be treated with medication and physical therapy. He did not advise surgical intervention for Rebecca. He stated that Rebecca will need at least ten years of treatment and that she could possibly require it for her entire life, since her problems have been chronic and without improvement for four years. Finally, Dr. Bar-Sela estimated the cost of physical therapy to be $6,000 to $8,000 per year.
Mary Jones, an expert in physical therapy, testified that she had administered physical therapy to Rebecca for six weeks in 1986 and on two occasions in 1988, on *9 the recommendations of two different doctors. Different techniques were used each time. Jones testified that Rebecca's neck and shoulder muscles were extremely tight and were in spasm and that there was a muscle knot in her neck. The physical therapy administered in 1986 and 1988 did not relieve Rebecca's symptoms, although Rebecca was a very cooperative patient.
Defendants urge that the award of future medical expenses was erroneous because none of the other doctors who examined Rebecca were able to diagnose her problem. The other doctors ran a wide variety of tests which all produced normal objective findings. A pre-existing condition was diagnosed with the C5 discs, but is unrelated to the muscle tension problems. We note that four of the other doctors did make the subjective findings of muscle strain, both cervical and lumbosacral, with accompanying headaches. None of them believed that Rebecca was malingering or exaggerating her complaints. Dr. Lowery, an orthopedic surgeon who examined Rebecca at the request of State Farm, testified that he had recommended conservative treatment such as muscle relaxants, anti-inflammatories and physical therapy.
Defendant argues that plaintiff's failure to introduce the testimony of three more doctors who conducted tests on her creates a presumption that their testimony would be adverse. Giving full weight to the presumption defendant claims, we could only presume that the testimony of the physicians who were not called by plaintiff would have been no worse than that of all the other experts who found no medical cause for her complaints. Defendant itself would not have failed to call these medical witnesses if their opinion would have added anything in defendant's favor beyond what the other doctors testified to.
Dr. Bar-Sela ran thermogram tests to diagnose Rebecca's problems. He testified that other, prior tests would not have revealed either the outlet syndrome or myofascial pain syndrome.
Finally, Rebecca testified that she had not undergone more extensive medical treatment because she could not afford it.
We find there is sufficient medical testimony as to the type of future treatment required and its probable cost to support an award of future medical expenses. The jury did not clearly err in giving more weight to the testimony of Dr. Bar-Sela and Mary Jones, since the stated reasons for their findings are not patently unsound. See Lirette v. State Farm Ins. Co., 563 So.2d 850 (La.1990). In fact, Dr. Lowery recommended the same medical treatment as Dr. Bar-Sela. Therefore, the award of $20,000 for future medical expenses is affirmed.

CONCLUSION
For the reasons given, the judgment of the trial court is affirmed. Costs of this appeal are assessed to the defendant-appellant, State Farm.
AFFIRMED.
NOTES
[*] Retired Judge William A. Culpepper sitting Pro Tempore pursuant to order of the Louisiana Supreme Court dated May 1, 1991.