647 So.2d 589 (1994)
Brian Alan BLACKSHEAR, Plaintiff-Appellant,
v.
ALLSTATE INSURANCE COMPANY, et al., Defendants-Appellees.
No. 94-765.
Court of Appeal of Louisiana, Third Circuit.
December 7, 1994.
*591 Robert M. McHale, Michael H. Schwartzberg, Lake Charles, for Brian Alan Blackshear.
Stephen A. Berniard Jr., Lake Charles, for Allstate Ins. Co., et al.
Wells Talbot Watson, Lake Charles, for William Daly.
Before YELVERTON, THIBODEAUX and PETERS, JJ.
PETERS, Judge.
Brian Alan Blackshear sustained personal injuries in a boating accident which occurred on May 21, 1989, on the Calcasieu River in southwest Louisiana. He instituted suit against William Daly, the operator of the boat, and Daly's liability insurer, Allstate Insurance Company, to recover his losses. Additionally, the action included a claim for punitive damages because of Daly's alleged intoxication at the time of the accident. After a bench trial, judgment was rendered in favor of Blackshear in a judgment itemized as follows:

General damages for injuries other than the back injury $30,000.00
General damages for back injury 60,000.00
Past medical expenses 13,243.05
Future medical expenses 23,800.00
Punitive damages 25,000.00
 -----------
 TOTAL $152,043.05[1]
The plaintiff appeals alleging two assignments of error:
(1) The trial court's award of $30,000.00 was an abuse of its discretion, considering the items of damages that are represented by that figure; and,
(2) The trial court abused its discretion in not awarding the full amount of future medical expenses.
Allstate has answered the appeal alleging three assignments of error:

*592 (1) The trial court's award of $25,000.00 in punitive damages was an abuse of its discretion;
(2) The trial court erred in making any award to appellant for the back injury; and in the alternative
(3) The trial court abused its discretion when it awarded $60,000.00 in damages for the back injury.
Thus, the sole issues before this court in this personal injury case are whether the trial court erred in its award of general, special, and punitive damages.

GENERAL FACTS
At approximately 10:00 a.m. on May 21, 1989, Daly, Blackshear, who is Daly's nephew, and two other individuals launched a boat in the Calcasieu River for a day of boating, skiing, hydro-sliding, and swimming. The boat was a nineteen foot sports craft with a Mercury 150 horsepower motor and was supplied for the day by Daly. During the course of the day, the four individuals consumed almost two cases of beer.
The accident occurred at approximately 7:00 or 7:30 p.m. as Daly was traveling down the river in fading light and without running lights. At the point where the accident occurred, the river is straight and approximately 180 feet wide. Daly testified that he was traveling approximately forty to forty-five miles per hour when the boat left the river and crashed into the bank on the west side. He admitted that he was following the shoreline too closely and that he was impaired by alcohol. All of his passengers were asleep so that no one was on the lookout for any danger.
When Daly lost control of the boat, Blackshear was asleep on the passenger side which was the side that received extensive damage. According to Daly, all three of the passengers were rendered unconscious in the accident and were ferried across the river from the accident scene to the east bank with the assistance of the residents of the east bank. All the occupants, including Daly, were taken to the emergency room of the Lake Charles Memorial Hospital. At 9:50 p.m., blood was drawn from Daly for alcohol content analysis. Subsequent test results revealed that at the time the blood was drawn, his blood-alcohol concentration was one hundred eighty milligrams of alcohol per one hundred milliliters of blood.

ISSUES RAISED BY PLAINTIFF'S APPEAL
Plaintiff's Assignment of Error No. 1.
The trial court found that Blackshear suffered multiple abrasions and lacerations over his entire body, including specifically cuts to his arm, abdomen, and both legs and feet; chest pains; a mild concussion; a broken rib; injuries to his right little finger, left ankle, right foot, and right thigh; scars; and a back injury in the accident. Evaluating the back injury separately, the trial court awarded $30,000.00 in general damages for the remaining injuries, and Blackshear contends on appeal that this award should be increased.
Blackshear, who was nineteen years old at the time of the accident, received medical treatment at the Lake Charles Memorial Hospital emergency room for multiple abrasions and lacerations to the entire body and for a mild concussion. Surgery was performed in the emergency room to close lacerations of his trunk and extremities and to repair a split extensor tendon in his finger. According to Blackshear, he suffered pain all over his body the day following the accident and was bedridden for two to three weeks.
Blackshear first saw Dr. Arthur Bishop, a family practitioner and allergist practicing in Baytown, Texas on May 30, 1989, nine days after the accident. Dr. Bishop noted that Blackshear initially complained of multiple aches and pains, particularly in his back and chest. On this initial visit, Dr. Bishop removed some sutures and prescribed medication. On July 31, 1989, Dr. Bishop again saw Blackshear and removed a piece of glass located approximately one centimeter below the surface of the patient's right thigh.
On February 16, 1990, Blackshear again consulted Dr. Bishop concerning complaints of soreness in his upper torso where his pectoral muscles inserted with the breastbone. X-rays revealed a fractured first rib near its junction with the spinal column that *593 was not completely healed. Although Dr. Bishop testified that he thought the rib should have healed long before February 16, 1990, if sustained in the accident, he noted that occasionally a nonunion can occur. The trial court concluded the rib injury was related to the boat accident. The last time Blackshear saw Dr. Bishop prior to trial was on June 5, 1991, at which time the patient complained of lumbar and lower thoracic pain which will be discussed later in relation to the award for the back injury.
As a result of the accident, Blackshear sustained physical scars about the entire body, but particularly on the right hand, the lateral aspect of the right arm, the right side of the abdomen, the lateral aspect of the left lower leg, and the left ankle. These were treated by Dr. Keith Yates, a Baytown, Texas plastic surgeon, beginning May 31, 1989. Blackshear's right hand injury did not improve and resulted in loss of flexibility in the small finger of that hand. On November 12, 1991, Dr. Yates performed surgical excision and revision of the scars on the right hand in an attempt to "release" the finger and increase flexibility. Additionally, he performed excision and revision of the scars of the right forearm during the procedure to relieve the tension caused by the scarring. As a result of this procedure, Blackshear was required to wear a cast on his right forearm and hand for thirteen days and underwent another procedure a week later to remove wires implanted to impede motion during the healing process.
Dr. Yates recommended additional surgeries to perform scar revision to Blackshear's right small finger, left ankle, left shin, right arm, abdomen, right forearm, and right thigh. According to Dr. Yates, the injuries to the right small finger and hand resulted in a continued weakness in Blackshear's ability to grip adequately. He recommended an additional surgery to release the finger joint and was of the opinion that Blackshear suffered from neuromata trapped in the scar tissue. According to Dr. Yates, Blackshear has only a twenty percent grip strength in the right hand because the right little finger will not straighten by approximately twenty-five degrees at the proximal IP joint. This weakness is all the more significant because, according to Dr. Yates, the little finger and the ring finger are the gripping fingers of the hand. With the injury to his hand, Blackshear only has a grip strength of twenty percent of normal. Even with surgery, Dr. Yates would not predict the degree of improvement which might be expected, but given the importance of the particular finger involved, it was his medical opinion the procedure was necessary.
Dr. Yates recommended additional surgeries for both functional and scar revision requirements. He suggested surgery to repair the right small finger, left ankle, left shin or leg, right arm, abdominal scars, right forearm, and right thigh.
Blackshear testified at trial that he still does not have full control of his little finger, that his right hand gets numb and pulls up into his tendons, and that his grip is poor in his hand. He also indicated that his scars get irritated in sunlight, are sore when touched a certain way, and are ugly and embarrassing. Additionally, he still suffers from soreness and aching in the arms as a result of his injuries.
An appellate court should rarely disturb an award of general damages since the discretion vested in the trier of fact is great and even vast. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Additionally, an appellate court should reduce or increase the award only when the award is beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances. Id. Given the extent of the injuries, the lasting effect of the physical disability and scarring, and the necessity of extensive future surgeries, we find in the instant case the award is an abuse of discretion and it should be increased. Under Reck v. Stevens, 373 So.2d 498 (La.1979) and Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), we raise the award to the lowest reasonable amount, or $50,000.00.
*594 Plaintiff's Assignment of Error No. 2.
The trial court awarded $23,800.00 in future medical expenses for the correction of scars resulting from the accident. Blackshear contends that the award is inadequate and should be increased. We agree.
Dr. Yates identified seven different areas on Blackshear's body for surgical scar revision and was of the opinion that, under the best of circumstances, all seven could be performed in three procedures. Apparently based on this estimate of only three procedures, the trial court awarded $7,500.00 as Dr. Yates' fee for future services. However, Dr. Yates estimated his fee at $1,500.00 to $2,500.00 per area regardless of the number of procedures performed. Therefore, his estimated fee would fall between a minimum of $10,500.00 and a maximum of $17,500.00. Thus, the award of $7,500.00 for Dr. Yates' future services is inadequate and should be increased to $14,000.00.
Dr. Yates estimated that the anesthetist's fee for the surgical procedures would be approximately $600.00 per hour. According to the doctor, the procedure associated with the finger would require surgical time of one to one and one-half hours, and the six other procedures would require from one-half hour to forty-five minutes each. Thus, the total cost for the anesthetist's fee could range from $2,400.00 (four hours×$600.00) to $3,600.00 (six hours×$600.00). The trial court's award of $2,800.00 falls within the range estimated by Dr. Yates, and we find no error in the award.
According to Dr. Yates, the hospital charges for a one hour surgical procedure would vary from $3,800.00 to $4,000.00 for day surgery with an additional $1,200.00 for any overnight admission. The trial court awarded $12,000.00 for the hospital stay plus a $1,500.00 contingency for overnight stay. The minimum hospital surgical charges would be $15,200.00 ($3,800.00 per hour × 4 hours). Additionally, by attempting to reduce the seven revisions in three procedures, one would anticipate at least two periods of overnight admission for a total cost of $2,400.00. Therefore, we increase the future hospital expense to $17,600.00.
Blackshear also contends that the trial court should have awarded $800.00 for a myelogram evaluation of his back injuries which was recommended by Dr. William Foster, a neurosurgeon. We agree and for the reasons set forth in the discussion concerning the award for the back injury, we find that Blackshear is entitled to expenses for the myelogram as well.
For the foregoing reasons, we raise the award for future medical expenses from $23,800.00 to $35,200.00.

ISSUES RAISED BY DEFENDANT'S ANSWER TO APPEAL
Defendant's Assignment of Error No. 1.
The trial court rendered judgment for $25,000.00 in exemplary or punitive damages as a result of this accident, and Allstate contends this was an abuse of discretion.
Louisiana Civil Code article 2315.4 provides that exemplary or punitive damages may be awarded upon proof that the injuries on which the action is based were caused by a wanton or reckless disregard for the rights and safety of others by a defendant whose intoxication while operating a motor vehicle was a cause in fact of the resulting injuries.
In the instant case, the defendants do not deny that Daly was legally intoxicated at the time of the accident. Instead they argue that the evidence does not substantiate the trial court's finding that intoxication was the cause in fact of the accident. The defendants contend the circumstantial evidence supports a finding that the accident was caused by the boat striking a submerged object rather than from any impaired conduct on Daly's part due to his intoxication. Additionally, the defendants assert there is no evidence that Daly's operation of the boat at any time prior to the accident was reckless or in wanton disregard for the safety of others.
To be considered wanton and reckless, typically, the necessary level of conduct is somewhere between an intent to do wrong and mere negligence. Bourgeois v. State Farm Mut. Auto. Ins., 562 So.2d 1177 (La. App. 4th Cir.), writ denied, 567 So.2d 611 (La.1990). Actions knowingly taken which *595 would likely cause injury to another fall within this category. Id. Although no specific conduct by an actor is necessary, a conscious indifference to consequences must be shown. Id. If the actor knows or should know that his actions will cause harm and proceeds anyway, there is a conscious indifference to consequences so that there is a wanton or reckless disregard for the rights and safety of others. Id.
Daly admitted to driving the boat at dusk or "kind of dark," without lights, at a speed of forty to forty-five mph, knowing that floating objects (tree limbs, etc.) were in the water, and having no passengers on the lookout. He admitted following too closely to the shoreline and that he had been drinking. Daly also testified that he thought his judgment was impaired by his consumption of alcohol. He explained that "between the debris and looking over at the camps ... (he) just ran into the bank." In light of the foregoing, we find ample support for the conclusion that Daly acted in wanton and reckless disregard for the rights and safety of others.
Additionally, we find no manifest error in the trial court's conclusion that the intoxication was a cause in fact of the accident. Daly's blood-alcohol test results reflected that he was clearly legally intoxicated over two hours after the accident with a blood-alcohol content of one hundred eighty milligrams of alcohol per one hundred milliliters of blood. (We note that this finding, when converted to grams per cubic centimeter, equates to 0.18 grams of alcohol per one hundred cubic contimeters of blood.) Dr. Andrew Ranier, a general pathologist, testified that Daly's blood-alcohol results would have been much higher at the time of the accident and that Daly was definitely intoxicated at that time. According to Dr. Ranier, this degree of intoxication would cause impairment of judgment, muscle coordination, visual acuity, and emotional stability and loss of restraint and inhibitions.
We note that under Louisiana Civil Code article 2315.4, a plaintiff is not required to prove that the defendant's intoxication was the sole cause of his injuries. Duplechain v. Old Hickory Cas. Ins. Co., 594 So.2d 995 (La.App. 3d Cir.1992). The court did not have to conclude that Daly hit debris and that this caused the accident. Daly only admitted that it was a possibility that he might have struck something, and the evidence substantiated that Daly was intoxicated and impaired.
Allstate also contends that the punitive damages award of $25,000.00 is excessive. The fact finder has much discretion in fixing exemplary damage awards. Brumfield v. Guilmino, 93-0366 (La.App. 1st Cir. 3/11/94); 633 So.2d 903, writ denied, 94-0806 (La. 5/6/94); 637 So.2d 1056. We find no abuse of discretion in this award.
Defendant's Assignment of Error No. 2.
X-rays taken on October 5, 1993, reveal that Blackshear suffers from a compressive thoracic fracture at the T-11 level, and to a lesser extent at the T-12 level, with slight wedging at the T-10 level. The trial court found this injury to be causally related to the boating accident and awarded $60,000.00 in general damages. The defendant contends the trial court erred in finding a causal connection. Specifically, the defendant asserts that the trial court failed to give any significance to the fact that Blackshear did not advise any physicians of back complaints until twenty-two months after the accident and after he became engaged in construction work. The defendant also contends the trial court should have considered the possibility that prior or subsequent accidents could have caused this injury.
In a suit for personal injuries, the plaintiff must prove causation by a preponderance of the evidence. Dabog v. Deris, 625 So.2d 492 (La.1993). However, the plaintiff is entitled to a presumption of causation if he shows that before the accident he was in good health but that commencing with the accident the symptoms of the disabling condition appeared and continuously manifested themselves afterwards, provided that the medical evidence shows a reasonable possibility of causal connection between the accident and the disabling condition. Id. Whether an accident caused a person's injuries is a *596 question of fact which should not be reversed on appeal unless manifestly erroneous. Housley v. Cerise, 579 So.2d 973 (La. 1991).
The thoracic spine injury was first diagnosed by Dr. William Foster, a Lake Charles, Louisiana neurological surgeon, as a result of an examination performed on October 5, 1993, just over four years and four months after the boating accident. Because the physical examination revealed muscle spasm in Blackshear's upper lumbar and lower thoracic areas and a positive straight leg raising test at forty degrees, Dr. Foster ordered x-rays which revealed a definite old compression fracture at T-11, and to a lesser extent at T-12, and slight wedging at T-10. Given those findings, Dr. Foster recommended that the plaintiff undergo a myelogram to determine the extent of nerve damage. He estimated the cost of the myelogram to be $800.00.
Before the boating accident, Blackshear had been involved in two other accidents. In 1984 he had fallen from a motorcycle, and in 1982, he had sustained a blow to the head. Blackshear denies having sustained any permanent injury as a result of these accidents. Additionally, after the boating accident, and before trial, Blackshear was involved in two other accidents. The first was an automobile accident on September 15, 1992, when a vehicle struck the back wheel of an extended cab truck in which he was riding, and the second was in 1992 when he fell from a motorcycle and sustained "a little strawberry on the shin." The trial court concluded these accidents were not causally connected to the plaintiff's current back injury, and we agree.
The record reflects that October 5, 1993, was not the first time Blackshear had complained of back pain since the boating accident. Blackshear testified that prior to the boating accident he never suffered from back problems but immediately following the accident he began to suffer pain all through his back. Blackshear's father, Walter Blackshear, testified that while his son was still in the hospital his main complaint was back pain. The plaintiff's mother, Wanda Blackshear, testified that her son never made any complaints about back pain before the accident but that since the accident he has not stopped complaining.
The medical evidence reflects that the plaintiff complained to Dr. Bishop of upper lumbar and lower thoracic pain on June 5, 1991, just over two years after the boating accident, but a year before the automobile and motorcycle accidents. Dr. Bishop testified that the plaintiff stated his back bothered him on and off following the accident, and the doctor related the back injury to the boating accident only by history.
Dr. Foster saw the plaintiff on October 11, 1992, concerning a neck injury he sustained in the automobile accident of September 15, 1992, and testified that his patient made no complaints of a back injury related to the automobile accident. It was Dr. Foster's opinion that the fracture was not of recent origin and could date back to the 1989 boating accident. He was also of the opinion that such a fracture would require a tremendous type of accident, collision, or force and the mechanism of the boating accident could certainly have caused it. In fact, Dr. Foster testified that as between the boating accident and the automobile accident, there was no question in his mind that the boating accident caused the back injury.
In light of the lay and medical testimony, we find that Blackshear is entitled to the presumption of causation as set forth in Dabog, supra, and we find no manifest error in the trial court's determination that the back injury was causally related to the accident.
Defendant's Assignment of Error No. 3.
The trial court awarded $60,000.00 in general damages for the back injury alone, and the defendant contends this award is excessive.
Blackshear indicated at trial, almost five years after the accident, that he was still having back pain and numbness associated with his back, that he has trouble bending over and picking up heavy things, and that he has difficulty sleeping at night. Dr. Bishop was of the opinion that Blackshear is the type of individual to minimize complaints, and Dr. Foster concluded that the plaintiff did not give any impression of malingering although he had a difficult time conveying *597 history. While Dr. Foster thought that the compression fractures should have healed by now, he did not find it unusual that Blackshear still had symptoms. He assigned a twenty percent permanent partial disability of the body as a whole due to the fractures, not for functional disability, but because of loss of height of those vertebral bodies, loss of motion, and pain.
In light of the foregoing, we find no abuse of discretion in the trial court's award of $60,000.00 for general damages associated with the back injury.

DISPOSITION
For the foregoing reasons, we amend the judgment to increase general damages for the injuries excluding the back injury to $50,000.00 and to increase future medical expenses to $35,200.00. We affirm the judgment in all other respects. We assess costs of this appeal to the defendant.
AMENDED AND AFFIRMED.
NOTES
[1] This court notes that the trial court allowed a credit against the award for past medical expenses of $2,021.96 leaving a net judgment of $150,021.09. However, the judgment signed by the trial court sets the recovery at $150,021.14.