760 So.2d 492 (2000)
Archie BOYETTE
v.
UNITED SERVICES AUTOMOBILE ASSOC., et al.
No. 99-1755.
Court of Appeal of Louisiana, Third Circuit.
April 12, 2000.
Rehearing Denied May 24, 2000.
*493 Bernard Kramer, Alexandria, Louisiana, Counsel for Plaintiff-Appellant.
Paul LaFleur, Gist, Methvin & Hughes, Alexandria, Louisiana, Counsel for Defendants-Appellees.
(Court composed of Judge HENRY L. YELVERTON, Judge BILLIE COLOMBARO WOODARD, Judge GLENN B. GREMILLION).
GREMILLION, Judge.
The plaintiff, Archie Boyette, appeals a jury verdict awarding him $50,000 in general damages and no damages for lost wages. He further argues that the trial *494 court erred in casting him with all court costs. For the following reasons, we affirm in part, amend in part, and reverse in part.

FACTS
Boyette sustained injuries to his lower back and neck on May 3, 1995, when his truck was rear-ended by a van driven by the defendant, Lisa Wyrick. As a result, Boyette filed suit against Wyrick and her insurer, United Services Automobile Association (USAA), and State Farm Mutual Automobile Insurance Company, his uninsured motorist policy provider. Scott Construction Equipment Company intervened in the suit, seeking to recover workers' compensation benefits paid to Boyette as a result of this accident. Scott Construction, Wyrick, and USAA were later dismissed from the suit via a Judgment of Dismissal of Selected Parties. The matter proceeded to trial against the remaining defendant, State Farm.
Following a jury trial, the jury rendered a verdict finding that Boyette was injured as a result of the May 3, 1995 accident. However, it only awarded him $50,000 in general damages and nothing for past or future lost wages. Since Boyette had settled with Wyrick for $50,000, the limits of her insurance policy with USAA, the trial court rendered judgment in favor of State Farm and dismissed Boyette's claims with prejudice. State Farm, who was cast with all court costs, filed a motion for partial new trial on the issue of court costs, arguing that Boyette should be cast with all costs since judgment was rendered in its favor. Following a hearing on the motion, the trial court granted State Farm's motion and modified the prior judgment to cast Boyette with all court costs. This appeal followed.

ISSUES
Boyette raises three assignments of error on appeal. He argues that the jury erred in failing to award him only $50,000 in general damages and no damages for lost wages. He also argues that the trial court erred in casting him with all court costs.

GENERAL DAMAGES
In Sengsouly v. Allstate Ins. Co., 99-22, pp. 5-6 (La.App. 3 Cir. 6/9/99); 744 So.2d 649, 652-53, writ denied, 99-2526 (La.11/19/99); 749 So.2d 677, this court stated:
The role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact, and the adequacy of the award should be determined by the facts or circumstances particular to the case under consideration. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). An appellate court should rarely disturb an award of general damages since the discretion vested in the trier of fact is great. Id. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of a particular injury to a particular plaintiff under the particular circumstances should the appellate court increase or reduce the award. Id. "The primary considerations in assessing damages are the severity and duration of the injured party's pain and suffering." Iorio v. Grossie, 94-846, p. 8 (La.App. 3 Cir. 10/4/95); 663 So.2d 366, 372.
Six days after the accident, Boyette was examined by Dr. C. Babson Fresh, a neurosurgeon who had performed two cervical fusions on him in 1992. He complained of neck and back pain, burning sensation up and down his spine, pain in his arms and hips, numbness in his hands and toes, sporadic weakness in his legs at times, and throbbing headaches. Dr. Fresh diagnosed Boyette as suffering from cervical and lumbar strain and recommended symptomatic treatment for his pain. On October 10, 1995, Dr. Fresh *495 noted that Boyette appeared to be suffering from depression. An MRI revealed some changes in the internal structure of the discs at L3-4, L4-5, evidence of the previous fusions at C4-5, C5-6, but no evidence of disc herniation in either the lumbar or cervical spine. On November 15, 1995, Dr. Fresh diagnosed Boyette as suffering from cervical and lumbar musculoligamentous strain, with aggravation of a pre-existing degenerative osteoarthritis, both cervical and lumbar. Dr. Fresh stated that the arthritic changes in Boyette's lower back could predispose him to injury in this type of accident. He further stated that the prior fusions put more stress on the segments above and below the fusions because the fused segments cannot move, thus, all movement occurs above and below the fused sections. Dr. Fresh felt that Boyette's condition was aggravated by his symptoms and his depression or psychological changes. Having no further treatment to offer, Dr. Fresh released Boyette from his care.
Dr. Rayland K. Beurlot, a specialist in physical medicine and rehabilitation, diagnosed Boyette as suffering from a possible spinal stenois, either in the cervical or lumbar spine, and relatively poor pain tolerance versus magnification. He further noted that Boyette exhibited stocking hypesthesia, which he described as a loss of or decreased feeling all the way around the leg. He stated that this condition can be related to a mental or psychological disorder. On November 28, 1995, Dr. Beurlot noted that Boyette moved very slowly and cautiously and that he was somewhat depressed. An EMG revealed spasm in the lumbar spine and bilateral carpal tunnel syndrome. Based on the EMG and the MRI, Dr. Beurlot determined that Boyette had not suffered damage to his spine.
When Boyette's pain continued to worsen, Dr. Beurlot determined that he was suffering from a soft tissue pain syndrome, and, because he felt that Boyette's psychological condition was playing a part in his condition, he referred him to a chronic pain clinic. On April 11, 1996, Dr. Beurlot concluded that Boyette's pain syndrome was due to a combination of degenerative changes in the cervical and lumbar spine and the carpal tunnel syndrome. Boyette returned to Dr. Beurlot on September 29, 1997. At that time, Dr. Beurlot reported that Boyette struck him as being depressed and that he smelled of alcohol. He ordered a functional capacity evaluation, which Boyette performed inconsistently at the sedentary level. Dr. Beurlot recommended psychological or psychiatric treatment because he felt that Boyette's mental condition was definitely affecting his physical condition.
Dr. Douglas Goodin, a psychiatrist, diagnosed Boyette with an adjustment disorder with depressed mood and substance abuse. He stated that after the May 3, 1995 accident, Boyette had difficulty sleeping, loss of or an impaired sexual function, and loss of interest in sex. His appetite had remained stable, but he had increased his alcohol consumption in order to self-medicate himself. Dr. Goodin described this as an adjustment disorder because, in addition to his pain problems, Boyette was having to adjust his lifestyle as the result of a specific incident. He felt that severe pain or trauma caused Boyette to undergo a change in his brain chemistry, which in turn produced the symptoms of depression. Dr. Goodin recommended that Boyette seek counseling for his alcohol abuse. He stated that Boyette returned to him in January, reporting that he had been doing little or no drinking. Dr. Goodin's diagnosis was not altered by Boyette's use of alcohol.
Dr. Goodin described Boyette as having an obsessive-compulsive personality disorder, making him very sensitive to things which are not quite right. He stated that Boyette's personality and emotional problems made his organic symptoms much worse than they would have been had he not had this type of personality. Dr. Goodin felt that Boyette's psychological problems were caused by his pain and the *496 changes in his life that the pain caused. This in turn aggravated and increased his physical symptoms.
Dr. Stephen Katz, a specialist in pain management, examined Boyette upon referral from Dr. Goodin. He felt that Boyette was suffering from chronic pain caused by: (1) physical injury, (2) psychological injury, and (3) the use of alcohol. When Boyette's generalized complaints of pain and his flat demeanor continued after several visits, Dr. Katz felt this indicated Boyette was depressed. He further felt that Boyette's history of alcohol abuse was contributing to the problem, since alcohol is a depressant.
Boyette testified that he has not been free from pain since the May 3, 1995 accident. He stated that he is unable to walk or drive for any distances, and is unable to dance, do yard work, help his wife shop, or go to pig roasts like he did prior to the accident. He further testified that he is unable to bathe or get dressed without his wife's help.
Boyette's wife, Laura, testified that she has done most of the driving since the accident because Boyette is unable to exert the movements necessary for driving, such as turning his head to turn corners. She stated that he is unable to walk great distances, walk on uneven terrain, go to the mall, help with grocery shopping, dance, work in the yard, or go to pig roasts or barbeques at the lake. She further testified that Boyette has to be careful getting in and out of the shower, and that she helps him bathe and get dressed due to his inability to bend. Laura stated that their marital relations have changed because of Boyette's inability to function sexually, which is caused by severe headaches.
After reviewing the record, we cannot say that the jury erred in awarding Boyette general damages in the amount of $50,000. Although we may feel that this is in the lower range of damages that could have been awarded to him, we cannot say that the jury abused its discretion in awarding this amount.

LOST WAGES
In his second assignment of error, Boyette argues that the jury erred in failing to award him any damages for past and future lost wages. We agree.
"The burden of proving a loss of income is on the plaintiff." Sengsouly, 744 So.2d at 654. Damages for past lost wages can be calculated with mathematical certainty from the proof submitted at trial and is an exception to the much discretion award. Id. "However, the jury must have a reasonable basis for exercising its discretion, and the record must provide a factual basis for the award." Myers v. Broussard, 96-1634, p. 17 (La.App. 3 Cir. 5/21/97); 696 So.2d 88, 97. With regard to loss of future wages, damages need not be proven with mathematical certainty, but only by such proof as reasonably establishes the plaintiffs claim. Veazey v. State Farm Mut. Auto. Ins., 587 So.2d 5 (La.App. 3 Cir. 1991). Factors to consider in determining an award for future loss of income includes the plaintiffs physical condition before the injury, his work history, work consistency, the amount he probably would have earned absent the injury complained of, and the probability that he would have continued to earn wages for the remainder of his work life. LeBlanc v. Steptore, 98-808 (La.App. 3 Cir. 12/9/98); 723 So.2d 1056, writ denied, 99-0087 (La.3/12/99); 739 So.2d 772.
Dr. Goodin testified that Boyette was permanently and totally disabled from working. In addition to pain, Boyette was suffering from impaired concentration, memory difficulties secondary to impaired concentration, depressed mood, sleep pattern disturbance, and appetite disturbance. Although substance abuse could result in sleep pattern disturbance, Dr. Goodin stated that he took this into account when making his diagnosis. He stated that Boyette's impaired concentration is a result of depression from chronic pain caused by the May 3, 1995 accident. Additionally, *497 Dr. Goodin testified that Boyette could be perceived as exaggerating his pain due to his emotional problems and his personality type.
Dr. Beurlot testified that he felt Boyette would be unable to drive for long periods of time, get in and out of a truck numerous times a day, handle equipment out of the back of a truck, or sit in place for long periods. He further testified that he felt Boyette was disabled from the date he first examined him, November 28, 1995. Dr. Beurlot testified that Boyette's mental condition was definitely affecting his physical condition, and that Boyette's response to his injury was definitely in excess of what normally is seen because of his predisposition to depression. He did not believe that Boyette was voluntarily malingering, rather, he felt that Boyette's mind was affecting his ability to recover from the physical insult that he experienced in the accident. Dr. Beurlot further stated that he was not surprised by Boyette's inconsistencies in his functional capacity examination, since they confirmed that there was more of a psychological and, possibly, a depressive problem than could be accounted for by the physical findings.
Although he did not specifically address disability, Dr. Fresh testified that Boyette's physical condition was aggravated by his depression or psychological changes. Dr. Katz did not address this either, however, he did feel that a psychological injury was one of three things causing Boyette's pain. He felt that Boyette's best hope of resolving his situation was by controlling his mental disorder and psychological condition.
Boyette's testimony revealed that he joined the Air Force after completing high school, retiring after twenty-three years and six months of service at the rank of Senior Master Sergeant. Following his service in the Air Force, Boyette worked as a service manager for Turpin Pontiac in Alexandria, and then as a counselor for the Employment Security Office for the State of Louisiana. Following his employment with the State, he was employed by Norwel Equipment Company as a service administrator and then as an outside salesman. His duties included inspecting customers' machines and recommending repairs and parts requirements. In 1993, Boyette went to work for Scott Equipment, continuing there until his position was abolished on November 20, 1995. His job duties included inspecting heavy construction equipment and forestry equipment on location. Boyette testified that he was never unemployed more than sixty days during the interim between any of his jobs.
Boyette stated that he could not have continued the type of work he was doing after Scott Equipment abolished his position on November 20, 1995, because his condition was progressively worsening. He stated that he was unable to work because of the pain he was experiencing and his inability to drive long distances. He further stated that he missed three to four days of work due to severe headaches. Boyette testified that he fell numerous times while trying to perform his job when his legs collapsed. He further explained that he did not apply for unemployment benefits because he could not have certified that he was able to work. He also testified that he had hoped to work until reaching the age of sixty-five.
L.C. Biehler, Jr., an accountant, testified that Boyette earned an average weekly wage of $504.44 during his employment with Scott Equipment. If Boyette had worked through the date of the trial, Biehler testified that he would have earned wages of $81,921.05. Biehler further calculated that Boyette would have earned an additional $45,207.91 had he worked through September 22, 2000, the day he turned sixty-five.
After reviewing the evidence, we find that the jury erred in not awarding Boyette any damages for lost wages. Since the evidence is undisputed that Boyette would have earned $81,921.05 through the date of the trial, and there is an absence of *498 evidence indicating that he would not have continued to work absent his injury, we find that the lowest amount the jury could have awarded for past lost wages was $81,921.05. The evidence as to future lost wages was also undisputed, thus, we find that the lowest amount the jury could have awarded for future lost wages was $45,207.91, for a total award of $127,128.96.

COURT COSTS
Considering our award of damages for lost wages, we reverse the trial court's order casting Boyette with all court costs. La.Code Civ.P. art. 2164. Accordingly, all court costs are cast to State Farm.

CONCLUSION
For the foregoing reasons, the judgment of the jury as to general damages is affirmed. We award damages for lost wages in the amount of $127,128.96 and reverse the trial court's judgment with regard to court costs. All court costs are assessed to the defendant-appellee, State Farm Mutual Automobile Insurance Company.
AFFIRMED IN PART; AMENDED IN PART; AND REVERSED IN PART.