817 So.2d 126 (2002)
Dixie Carrier and Chris CARRIER, Individually and on Behalf of their Minor Children, Kelly Carrier and Casey Carrier,
v.
NOBEL INSURANCE COMPANY, Western American Transportation Services, Inc. and Richard Wade Barnett.
No. 01-0983.
Court of Appeal of Louisiana, Third Circuit.
February 6, 2002.
Writs Denied May 10, 2002.
*129 Gregory K. Moroux, Onebane, Bernard, et al, Lafayette, LA, Andre F. Toce, Attorney at Law, Lafayette, LA, Adras Paul LaBorde Endom, Andre F. Toce & Associates, Lafayette, LA, Counsel for Dixie Carrier, Chris Carrier.
James Michael Dill, Attorney At Law, Lafayette, LA, Counsel for Nobel Insurance Company, Western American SpecializedTransportation Services, Inc., Richard Wade Barnett.
Court composed of JOHN D. SAUNDERS, OSWALD A. DECUIR, and GLENN B. GREMILLION, Judges.
SAUNDERS, J., Judge.
This case arises from a two vehicle accident that occurred on March 12, 1997. The Defendants stipulated to liability and only damage-related issues were presented at trial. The jury returned a verdict of $2.67 million. From this verdict, the Defendants appeal.

General Facts
On March 12, 1997, Dixie Carrier was driving her truck on the service road of Highway 90 in Broussard, Louisiana. At the same time, Richard Barnett was driving a vehicle on Tubing Road. After running a stop sign, Barnett caused a collision between the two vehicles. As a result of the accident, Carrier sustained both property damage and personal injuries. Since the Defendants have stipulated to liability in causing the accident, only damage-related issues were tried.
Due to the injuries sustained in this accident, Carrier has undergone both decompression of her right acromioclavicular joint and a fusion of her lumbar vertebrae at the L4-5 level. Both of these procedures, on her lower back, were performed by Dr. John Cobb. Additionally, Carrier alleges to have experienced urinary dysfunction and torn shoulder ligaments as a result of this accident. At trial, upon hearing evidence relating to the damages sustained by the Plaintiffs, the jury returned a verdict awarding the Plaintiffs $2.67 million in total damages.
From this judgment, the Defendants assert the following assignments of error:
(1) The jury committed manifest error when it found that Carrier's low back surgery, bladder condition and psychological problems were related to her March 12, 1997, accident in light of the medical evidence to the contrary and the amount of time that passed between the accident and *130 Carrier's complaints of these injuries.
(2) The jury committed manifest error in awarding Carrier $1.159 million in general damages for injuries that were not related to her accident and where such an award would have been outrageous and insupportable even if they were so related.
(3) The jury committed manifest error in awarding Carrier $655,000 in past lost wages and loss of earning capacity in light of the evidence introduced at trial that established that Carrier did not miss a significant amount of time from work following her accident and that, after her surgeries, she could return to the same employment that she held before the accident.
(4) The jury committed manifest error in awarding Carrier $750,000 in future medical expenses where such future expenses were based on injuries unrelated to the accident or wholly speculative evidence concerning Carrier's future medical procedures.
(5) The trial court committed reversible error when it included Nobel Insurance Company as a solidary obligor for the entire amount of the $2,674,540 judgment awarded to Plaintiffs, as Nobel's policy limits were only $1,000,000.

Law and Analysis
It is well settled that "[t]his court will not set aside a trial judge's or jury's finding of fact in the absence of `manifest error' or unless it is `clearly wrong.'" Johnson v. First Nat. Bank of Shreveport, 00-870, p. 10 (La.App. 3 Cir. 6/20/01); 792 So.2d 33, 45; citing Stobart v. State Through D.O.T.D., 617 So.2d 880, 882 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). "In order for this court to conclude that the factfinder's determination warrants reversal, we must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong." Johnson, 00-870, p. 10; 792 So.2d at 45; citing Stobart, 617 So.2d 880; Mart v. Hill, 505 So.2d 1120 (La.1987). Thus, we must do more than simply review the record for some evidence which supports or controverts the factfinder's determinations. Id. Rather, we must review the record to determine whether these findings were clearly wrong or manifestly erroneous. Id. We may not reverse if the trial court or jury's findings are reasonable in light of the record. Johnson, 00-870; 792 So.2d 33; Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106 (La.1990).

Defendants' First Assignment of Error
As their first assignment of error, the Defendants assert that the jury committed manifest error when it found that Carrier's lower back condition, bladder dysfunction, and psychological problems were related to her March 12, 1997, accident, in light of the medical evidence to the contrary and the amount of time that passed between the accident and Carrier's complaints of these injuries.
"In a suit for personal injuries, the plaintiff must prove causation by a preponderance of the evidence." Blackshear v. Allstate Ins. Co., 94-765, p. 10 (La.App. 3 Cir. 12/7/94); 647 So.2d 589. Louisiana law provides a presumption of causation between a plaintiffs injuries and a certain accident provided the plaintiff was in good health prior to the accident, but commencing with the accident, the symptoms of the disabling symptoms appear and continuously manifest themselves afterwards. Housley v. Cerise, 579 So.2d 973 (La.1991); citing Lucas v. Insurance *131 Co. of N. Am., 342 So.2d 591 (La.1977). This presumption of causation must be supported by medical evidence that shows a reasonable possibility of a causal connection between the accident and the disabling condition. Id. "Whether an accident caused a person's injuries is a question of fact which should not be reversed on appeal absent manifest error." Blackshear, 94-765, p. 10-11; 647 So.2d at 595; citing Mart, 505 So.2d 1120.
The Defendants allege that the trial court erred in finding a causal connection between the accident and Carrier's injuries. Specifically, the Defendant's allege that the trial court erred in applying the Housley presumption to all of Carrier's injuries. In support of this argument, the Defendants assert that Dixie Carrier failed to complain of these injuries for months after the date of the accident and that some of her injuries could have been the result of previous conditions.

Lower Back
The car accident giving rise to this litigation occurred on March 12, 1997. Following the accident, Dr. Richard Saloom was the first physician to treat Carrier. The record indicates that, on her initial visit to Dr. Saloom, Carrier complained of neck, shoulder and lower back pain. After ordering x-rays, and upon further examinations, on April 22, 1997, Dr. Saloom diagnosed Carrier with a lumbar sprain along with other ailments. On May 20, 1997, Carrier consulted Dr. Robert White where she complained of back pain. While she was being treated by Dr. White, Carrier also received treatment from Dr. Jerald Watts. Carrier visited Dr. Watts on June 2, 1997, and again she complained of back pain. Finally, on October 16, 1997, Carrier sought treatment from Dr. John Cobb. In the patient history form completed by Carrier, she indicated that she was experiencing back pain. Furthermore, on January 5, 1998, Dr. Cobb noted that Carrier is continuing to complain of lower back pain. As a result of this lower back pain, Dr. Cobb recommended that Carrier undergo a lumbar MRI, which ultimately revealed that her L4-5 disc had herniated. Consequently, Dr. Cobb performed a fusion at the L4-5 level on Carrier.
Although the record indicates that Carrier continuously complained of back pain, it is not clear whether this pain was to her lower back. It is clear that she did complain of lower back pain to Dr. Saloom on her first visit and he did diagnose her with a lumbar strain. In January, Dr. Cobb notes that she "continues" to complain of lower back pain. It is not clear whether this notation refers to the March 20, 1997, complaint of lower back pain or to some other unnoted complaint of pain, or whether some of the "back pain" might have reference to lower as well as upper back pain. At trial, these facts were presented to the jury, and they ultimately found a causal connection between the accident and the pain to Carrier's lower back. In light of the great deference given to the trier of fact, we cannot say that the jury's findings were manifestly erroneous or clearly wrong. Accordingly, we affirm the trial court's finding that Carrier's lower back pain resulted from the March 12, 1997, accident. In addition to alleging that Carrier failed to complain of lower back pain for months, the Defendants further allege that any lower back pain experienced by Carrier could have been the result of a preexisting condition. Particularly, the Defendants argue that rather than being injured in the March 12, 1997, accident which totaled two trucks, the Defendants argue that Carrier's lower back pain is related to either: (1) an office visit in 1991 where she complained of back pain and merely received instructions to get off of her feet more; (2) an office visit for *132 back pain in 1992 when she was seven and one-half months pregnant; or (3) as the result of a minor vehicle accident in 1995 where she received a few months of chiropractor treatment, and was eventually released totally pain free.
Upon review, we find the record indicates that Carrier's injuries were, more probably than not, related to the March 12, 1997, accident. The record shows that Dr. Cobb, Dr. McSherry, Dr. Freidbert, and Dr. Phillips are all of the opinion that Carrier's various injuries were caused by the March 1997 accident. In an attempt to rebut this finding, the Defendants presented the testimony of Dr. Duval and Dr. Beacham. However, both of these doctors testified that, under the facts of this case, Carrier's injuries were, more probably than not, related to the March 12, 1997, accident.
Accordingly, we cannot say that the trial court committed manifest error in finding that Carrier's back injury was causally related to the March 12, 1997, accident. Thus, the decision of the trial court is affirmed.

Bladder Condition
With regard to Carrier's bladder dysfunction, the Defendants allege that the condition did not arise until two years after the accident, and is therefore not subject to the Housley presumption of causation. Upon review, we find no error in the finding of the trial court and affirm.
Following the March 12, 1997, accident, Carrier started to experience bladder dysfunction. Due to this problem, Carrier sought treatment from Dr. Susan McSherry, a urologist. Dr. McSherry performed an urodynamics study and determined that she was suffering from a neurogenic bladder. Dr. McSherry, along with Dr. Cobb and Dr. Phillips, testified that Carrier's abrupt onset of bladder dysfunction combined with the lack of any urinary problems prior to the March 12, 1997, accident indicates that her injuries from the accident likely caused her bladder problems.
In light of this expert testimony, we find it to be reasonable for the trial court to conclude that the March 12, 1997, accident caused Carrier's bladder dysfunction. Accordingly, we affirm.

Psychological Problems
In connection with her psychological problems, Dr. Phillips referred Carrier to Dr. Ted Friedberg, a clinical psychologist. Dr. Friedberg testified that Carrier's tests revealed that she is suffering from depression, sadness, and lack of self-esteem. Although Dr. Friedberg did note that Carrier has previously had bouts with depression, he explained that he does not feel this prior depression is related to the difficulties that she is currently experiencing. Finally, Dr. Friedberg testified that it is more likely than not that the emotional problems that she is experiencing are all a result of the 1997 accident.
Upon review, we find no manifest error by the trial court in finding that Carrier's psychological problems were caused by the March 12, 1997, accident. As such, we affirm.

Defendants' Second Assignment of Error
"General damages are those damages which may not be measured in exact monetary terms." Johnson, 00-870, p. 20; 792 So.2d at 58; citing Sallis v. City of Bossier, 28,483 (La.App 2 Cir. 9/25/96); 680 So.2d 1333, writs denied, 96-2599, 96-2592 (La.12/13/96); 692 So.2d 1063, 376. General damages involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or lifestyle. Johnson, 00-870; 792 So.2d 33. "The jury, as trier of fact, is given vast *133 discretion in assessment of damages." Id. at p. 20; 792 So.2d at 58; citing La.Civ. Code art. 2324.1; Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993); cert denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
When reviewing an award of general damages, our first inquiry is whether the trier of fact abused its great discretion. Cone v. National Emergency Servs. Inc., 99-0934 (La.10/29/99); 747 So.2d 1085. When an award is beyond what a reasonable trier of fact could assess for the effect of a particular injury to a particular plaintiff under particular circumstances we will reduce the award. Johnson, 00-870; 792 So.2d 33; Youn, 623 So.2d 1257.
The Defendants allege that the jury committed manifest error in awarding Carrier $1.159 million in general damages. We recognize that a jury is entitled to great discretion in setting general damages. As such, we cannot say that the jury committed manifest error in awarding $1.159 million in general damages.
The record indicates that the mental anguish, pain and suffering associated with Carrier's injuries are significant. As a result of this accident, Carrier has undergone surgery on her right shoulder and a fusion of her lumbar spine. The record further indicates that Carrier will suffer from flare-ups of back pain for the remainder of her life. Additionally, Carrier shall experience urinary dysfunction for the remainder of her life. As a result, she will have to remain on medication and wear adult diapers.
Upon review, we cannot say that the jury abused its great discretion in awarding $850,000.00 to the Plaintiffs for past and future pain and suffering. Thus, we affirm.
Moreover, because of her injuries, the Plaintiff has experienced a loss of enjoyment of life. Due to Carrier's injuries, the trial court found that she has experienced and continues to suffer from the loss of enjoyment of her own life as well as the loss of some experiences with her spouse and children. After reviewing the record, we acknowledge the severity of this loss and find that the trial court's award is reasonable. Accordingly, we affirm the trial court's award of $300,000 for Carrier's loss of enjoyment of life.
Furthermore, in light of the severity of Carrier's injuries, we do not find an abuse of discretion by the trial court in awarding $9,000.00 for permanent disability and disfigurement. Accordingly, we affirm this award.

Defendants' Third Assignment of Error

Lost Wages
"The burden of proving loss of income is on the plaintiff." Boyette v. United Servs. Auto. Ass'n, 99-1755, p. 6 (La.App. 3 Cir. 4/12/00); 760 So.2d 492, 496; rev'd on other grounds 00-1918 (La.4/3/01); 783 So.2d 1276; quoting Sengsouly v. Allstate Ins. Co., 99-22, p. 7 (La. App. 3 Cir.); 744 So.2d 649, 654, writ denied, 99-2526 (La.11/19/99); 749 So.2d 677. When awarding lost wages, the record must provide a factual basis for the award. Boyette, 99-1755; 760 So.2d 492.
The office manager for Carrier's former employer, Ray Oil Tools, testified that, at the time of the accident, she was earning approximately $1,400 per month. As a result of her injuries, Carrier required extensive medical treatment causing her to miss large amounts of time from her job at Ray Oil Tools. In order to receive the necessary medical care, Carrier was eventually forced to quit her job due to the extended amount of time she could not be at work. Because she was *134 forced to forego her job at Ray Oil Tools, Carrier lost not only the wages she was to receive but also the benefits arising out of the company's profit sharing program.
Upon review, we find no error in the trial court's awarding $5,000.00 in past lost wages. Accordingly, the award for lost wages is affirmed.

Loss of Earning Capacity
In Batiste v. New Hampshire Insurance Company, 94-1467, p. 3 (La.App. 3 Cir. 5/3/95); 657 So.2d 168, 170; writ denied, 95-1413 (La.9/22/95); 660 So.2d 472, this court stated:
Loss of earning capacity is not the same as lost wages. Rather, earning capacity refers to a person's potential. Earning capacity is not necessarily determined by actual loss. While the plaintiffs earnings at the time of the accident may be relevant, such figures are not necessarily indicative of his past or future lost earning capacity. The plaintiff need not be working or even in a certain profession to recover this type of award. What is being compensated is the plaintiffs lost ability to earn a certain amount, and he may recover such damages even though he may never have seen fit to take advantage of that capacity. Hobgood v. Aucoin, 574 So.2d 344 (La.1990).
When determining if a plaintiff is entitled to recover for loss of earning capacity, the court should consider the amount that the plaintiffs current condition disadvantages her in the work force. Bellard v. South Cent. Bell Tel. Co., 96-1426 (La.App. 3 Cir.1997); 702 So.2d 695; writ denied, 97-2415 (La.12/12/97); 704 So.2d 1202.
The record reflects that, at the time of the accident, Carrier was working full-time and earning approximately $17,000 per year at Ray Oil Tools. Carrier was unable to perform any work for a brief period of time after her surgeries. Following her surgeries, she has been able to assist in the running of her convenience store. However, because of her injuries, Carrier has been limited to strictly light-duty work for short periods of time.
We find the record clearly indicates that Carrier has suffered a loss of earning capacity. Specifically, due to her injuries, Carrier is precluded from medium and heavy-duty job positions. Because Carrier is not able to perform these jobs, she has suffered a loss of accessibility to the job market. However, because Carrier may still be able to perform light-duty work, she has not suffered a complete loss of accessibility to the job market. At trial, the jury awarded Carrier $650,000.00 for loss of earning capacity. In light of the fact that she may still be able to perform some type of light-duty work, we find this award to be unreasonable and an abuse of discretion. Accordingly, we amend the award by the trial court and award Carrier $500,000.00 in loss of earning capacity.

Defendants' Fourth Assignment of Error
As error, the Defendants' urge that the trial court abused it discretion in awarding Carrier $750,000.00 in future medical expenses. Having found that Carrier's injuries are related to the March 12, 1997, accident, we must now determine whether the amount awarded by the trial court, in future medical expenses, was an abuse of discretion.
In order to recover for future medical expenses, the plaintiff must establish the amount of the award with some degree of certainty. Cormier v. T.H.E. Ins. Co., 97-1143 (La.App. 3 Cir. 5/27/98); 716 So.2d 387; rev'd on other grounds, 98-2208 (La.9/08/99); 745 So.2d 1. An award for future medical expense "will not be made in the absence of medical testimony as to the requirement for such expenses *135 and their probable cost." Id. at p. 11; 716 So.2d at 395; quoting Rowe v. State Farm Mut. Auto. Ins. Co., 95-669, p. 20 (La.App. 3 Cir.); 670 So.2d 718, 730, writ denied, 96-0824 (La.5/17/96); 673 So.2d 611. In Veazey v. State Farm Mutual Auto Insurance, 587 So.2d 5, 8 (La.App. 3 Cir.1991), this court explained:
Future medical expenses, like any other damages must be established with some degree of certainty. The plaintiff must show that, more probably than not, these expenses will be incurred. Awards will not be made in the absence of medical testimony that they are indicated and setting out their probable cost. An award for future medical expenses cannot be based on mere speculation of the jury. Much stronger proof, such as medical testimony of the specific expenses to arise, should be required for such an award. (Citations Omitted.)
The Defendants assert that, based on the record, there is insufficient evidence to support the jury's award of future medical expenses. Upon review, we find that this assignment of error lacks merit.
As the record indicates, both Dr. Philips and Dr. Cobb testified that, as a result of her injuries, Carrier will need to undergo more surgical procedures to her left shoulder and back. Additionally, there is evidence offered by the Plaintiffs that physical therapy may be necessary for the remainder of Carrier's life. Finally, the Plaintiffs introduced evidence that Carrier will need medication to control pain and inflammation for the remainder of her life.
With respect to her bladder dysfunction, Dr. McSherry testified that Carrier will need to remain on medication for life. Additionally, Dr. McSherry stated that further medications may be needed to control other health complications resulting from her bladder dysfunction, and future tests will be needed to monitor her condition. Finally, Carrier will also need to wear adult diapers for the rest of her life. In an attempt to quantify these future medical expenses, the Plaintiffs introduced the testimony of Dr. Douglas Womack, an expert economist. Dr. Womack explained that, based on the testimony of her treating physicians, he was able to calculate an estimated cost of Carrier's future medicals. Dr. Womack testified that the cost of her future treatment would range from $717, 838.00 to $869,907.00. Based on the testimony by her treating physicians and Dr. Womack, the jury returned with an award of $750,000.00.
In light of the evidence offered by the plaintiffs, we find that they established the amount of future medicals with some degree of certainty and that these expenses will more probably than not be incurred. Accordingly, the trial court's award of $750,000.00 in future medical expenses is affirmed.

Defendants' Fifth Assignment of Error
As its final assignment of error, the Defendant, Nobel Insurance Company, asserts that the trial court erred when it included Nobel as a solidary obligor for the entire amount of the judgment awarded to the Plaintiffs. We have reviewed the judgment and find it to be silent as to whether Nobel Insurance Company is solidarily liable for the entire amount of the judgment. However, out of an abundance of caution, we will address this issue.
Generally, an insurer is solidarily liable with the insured. However, when a policy has specific language limiting the liability of the insurer, the insurer may only be found to be solidarily liable up to the policy limits. Brannon v. Shelter Mut. Ins. Co., 520 So.2d 984 (La.App. 3 Cir.1987). Upon review, we find that the policy in question does limit the insurer's liability. Due to this policy language, we *136 find Nobel Insurance Company to be solidarily liable only up to its policy limits.

Decree
For the forgoing reasons, we affirm the trial court's determination that Carrier's injuries were caused by the March 12, 1997, accident. Furthermore, we find Nobel Insurance Company to be solidarily liable only up to its policy limits. Finally, we amend the judgment and award damages to Carrier as follows:

Past and future pain and $850,000.00
 suffering
Loss of enjoyment of life $300,000.00
Permanent disability and $ 9,000.00
 disfigurement
Past medical expenses $ 75,540.00
Future medical expenses $750,000.00
Past lost wages $ 5,000.00
Loss of earning capacity $500,000.00

All costs of appeal are assigned to the Defendants.
AFFIRMED AS AMENDED.